No. 02-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 326

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

GARY LACASELLA,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and for the County of Missoula,
                      The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Mark E. Jones, Attorney at Law, Missoula, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Pam Bucy,
            Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana


                Submitted on Briefs:  August 29, 2002

                          Decided:  December 19, 2002

Filed:

 

                              Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Appellant, Gary Lacasella, was charged with driving under the influence of alcohol (DUI) and driving with his license suspended in Missoula County Justice Court. He pled guilty to the charges and reserved the right to appeal the Justice Court's denial of his motion to suppress evidence, which he based on an allegation that the arresting officer had no particularized suspicion for stopping him. The District Court for the Fourth Judicial District in Missoula County denied his appeal and motion to suppress and returned his case to the Justice Court for sentencing. Lacasella appeals the District Court's ruling. We reverse the Order of the District Court.

¶2 The sole issue on appeal is whether the District Court erred when it denied Lacasella's motion to suppress evidence that he alleges was obtained following an illegal investigatory stop.

FACTUAL AND PROCEDURAL BACKGROUND

¶3 At around 11:00 P.M., on February 18, 2001, Missoula County Sheriff's Deputy Michael Dominick was on routine patrol near Marvin's Bar when he observed a red Ford pick-up truck pull onto Highway 93. He noted that the vehicle appeared to have no front license plate and had a broken spare tire carrier. After following the vehicle onto westbound Interstate 90, he initiated an investigatory stop to determine if the vehicle was being driven on a state highway in violation of § 61-3-301, MCA, which requires that license plates be conspicuously displayed on both the front and rear of a vehicle.

2

¶4   The pick-up truck was being driven by Gary Lacasella.  As Deputy Dominick approached the vehicle, Lacasella stepped out of the vehicle and appeared to be unsteady on his feet.  Deputy Dominick  informed Lacasella he had stopped him because he did not have a license plate on the front of his vehicle.  At that time Lacasella showed Deputy Dominick his license plate, which was taped to the lower driver's side corner of his front windshield.  Deputy Dominick explained that the license plate was required to be mounted on the front bumper of the vehicle.  He observed that Lacasella smelled of alcohol, slurred his speech, appeared confused and had difficulty removing his driver's license from his wallet.

¶5   Deputy Dominick returned to his patrol car and performed a record check, which  revealed that Lacasella's license had been revoked and he had two prior DUIs.  Based upon his observations and the record check, he requested that Lacasella perform a field sobriety test.  When Lacasella performed poorly, he was arrested for DUI and driving with a suspended or revoked license.

¶6   On February 20, 2001, Lacasella was charged with one count of operating a motor vehicle while under the influence of alcohol or drugs, third offense, in violation of § 61-8-401, MCA; and one count of driving while license suspended or revoked in violation of § 61-5-212, MCA.  On June 29, 2001, Lacasella filed a motion to suppress all of the evidence that was gathered after the investigatory stop.  He contended that the traffic stop was illegal because his license plate was properly displayed and that Deputy Dominick did not have particularized suspicion a crime had been or

3

was being committed. The Justice of the Peace denied his motion and concluded that a plain reading of § 61-3-301, MCA, provided the necessary particularized suspicion because Lacasella's license plate was not attached to the front of his vehicle. On August 14, 2001, Lacasella pled guilty to the charges and he reserved the right to appeal the Justice Court's denial of his motion to suppress to the District Court.

¶7 Lacasella appealed to the Fourth Judicial District Court in Missoula County on October 22, 2001. He argued that § 61-3-301, MCA, does not mandate that a vehicle's front license plate be secured to the vehicle's front bumper. He maintained that the manner in which his license plate was displayed in the windshield of his truck satisfied the plain language of § 61-3-301, MCA. Therefore, he contended that Deputy Dominick's investigatory stop, which was based entirely on the lack of a license plate on the front bumper of his vehicle, was illegal.

¶8 On December 6, 2001, the parties stipulated that three pictures taken of the front of Lacasella's vehicle accurately reflected the manner in which the license plate had been located and taped to the window on the night Lacasella was stopped. Those pictures show that the license plate was secured with duct tape to the lower driver's side corner of the front windshield of Lacasella's truck.

¶9 On February 28, 2002, the District Court held that the inside of the front windshield of a pick-up truck did not constitute the "front" of the vehicle, and that the license plate was not

4

"unobstructed from plain view" when displayed in the window of a vehicle because glare could prevent the license plate from being viewed at night. Furthermore, the court stated that even if Deputy Dominick had seen the plate in the window, he was permitted to make an investigatory stop to ensure the plate was "securely fastened" to the vehicle as required by the law. Consequently, the District Court denied Lacasella's motion to suppress and returned the case to the Justice Court for sentencing.

## STANDARD OF REVIEW

¶10 Our standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those facts were correctly applied as a matter of law. *State v. Williams* (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *State v. Henderson*, 1998 MT 233, ¶ 9, 291 Mont. 77, ¶ 9, 966 P.2d 137, ¶ 9. Interpretation and construction of a statute is a matter of law which we review to determine whether the district court's conclusions are correct. *State v. Price,* 2002 MT ___, ¶ 15, ___ Mont. ___, ¶ 15, 50 P.3d 530, ¶ 15(citation omitted).

## DISCUSSION

¶11 Did the District Court err when it denied Lacasella's motion to suppress evidence that he alleges was obtained following an illegal investigatory stop?

5

¶12 Lacasella contends that the District Court erred when it held that his license plate was not conspicuously displayed on the front of his vehicle pursuant to § 61-3-301, MCA, and concluded that Deputy Dominick had particularized suspicion that Lacasella was engaged in criminal conduct. He maintains that the manner in which his license plate was displayed complies with § 61-3-301, MCA; therefore, the stop was unlawful and all evidence gathered after the stop must be suppressed. He also challenges the District Court's conclusion that even if the plate was visible, Deputy Dominick could lawfully make an investigatory stop to determine whether the plate was securely fastened to the vehicle.

¶13 The State argues that Lacasella's licence plate was not conspicuously displayed on the "front" of the vehicle because the inside of the windshield is in the center of the vehicle. Furthermore, the State argues that Deputy Dominick's inability to see the license plate is proof that the license plate was not in plain view at night. Therefore, Lacasella was in violation of the law and the stop was warranted. Alternatively, the State contends that Deputy Dominick had particularized suspicion to initiate a stop because he could not see the license plate displayed in Lacasella's window when he observed his vehicle pull onto Highway 93. Because the information relevant to determination of particularized suspicion is that information which is known to the officer at the time the stop is initiated, the State argues that Deputy Dominick lawfully stopped Lacasella to determine whether his vehicle was properly registered, and that the observations made while Deputy Dominick approached Lacasella broadened the scope of

6

the stop to include particularized suspicion that Lacasella was driving under the influence of alcohol.

A.    Section 61-3-301, MCA.

¶14 Whether particularized suspicion existed in this case first requires us to determine whether Deputy Dominick and the District Court correctly interpreted § 61-3-301, MCA.  When interpreting statutes, this Court's only function is to give effect to the intent of the legislature.  *State v. McNally*, 2002 MT ___, ¶ 19, ___ Mont. ___, ¶ 19, 50 P.3d 1080, ¶ 19 (citations omitted). Construction of a statute requires this Court "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted."  Section 1-2-101, MCA.

¶15 Section 61-3-301, MCA, provides:

> a person may not operate a motor vehicle upon the public highways of Montana unless the vehicle is properly registered and has the proper number of plates conspicuously displayed, one on the front and one on the rear of the vehicle, each securely fastened to prevent it from swinging and unobstructed from plain view . . . .

¶16 The purpose of requiring a license plate to be conspicuously displayed on the front and rear of a vehicle is to enable law enforcement officers to ascertain whether a vehicle that is approaching or being followed is properly registered.  The State asks this Court to conclude that the "front" of a vehicle, as used in § 61-3-301, MCA, is limited to the front bumper and grill of a vehicle.  However, common sense indicates that such a narrow definition of front in this context makes conduct that complies with the purpose of the statute illegal.  The law simply requires

7

that license plates be visible from both the front and the rear of a vehicle. The photographs of Lacasella's vehicle demonstrate that his license plate was visible from the "front" of the vehicle and could be seen by an approaching vehicle. We conclude that the manner in which Lacasella displayed his license plate complied with § 61-3-301, MCA's, requirement that a license plate be displayed on the front his pick-up truck.

¶17 Lacasella also contends that the District Court erred when it concluded that his license plate was not "conspicuously displayed" in compliance with § 61-3-301, MCA. He argues that the pictures stipulated to by the parties clearly indicate that his plate was "conspicuously displayed." The State argues that a license plate displayed behind a windshield is not unobstructed from plain view. It maintains that a license plate set inside a windshield is not readily visible at night because the glare from headlights diminish the ability of an observer to see the plate, as demonstrated by this case.

¶18 The pictures stipulated to by the parties show that the windshield was clear and the license plate was visible through it. The District Court speculated that it was highly unlikely that a law enforcement officer would be able to see the license plate at night because the glare of headlights would obscure it from plain view. However , there is no evidence that the plate was obscured by glare on the night in question. Although a court is permitted to make reasonable inferences from the facts, it is not permitted to assume facts not in evidence. Therefore, we conclude that

8

Lacasella's license plate was clearly and conspicuously displayed and unobstructed from plain view.

B.    Particularized Suspicion

¶19 Montana recognizes a narrow exception to the Fourth Amendment's protection against warrantless searches and seizures "which allows a law enforcement officer to briefly detain and question an individual without probable cause if the officer suspects the individual has committed or is in the process of committing an offense."  *State v. Henderson*, 1998 MT 233, ¶ 11, 291 Mont. 77, ¶ 11, 966 P.2d 137, ¶ 11 (citing *Terry v. Ohio* (1986), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889).  Montana has codified this exception at § 46-5-401, MCA:

> **Investigative Stop**.  In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

¶20 Whether "particularized suspicion" exists is determined in light of the totality of the circumstances.  *Henderson*, ¶ 12 (citing *State v. Gopher* (1981), 193 Mont. 189, 631 P.2d 293.  The totality of the circumstances takes the officer's knowledge and training into consideration.  *Henderson*, ¶ 12 (citing *Gopher*, 193 Mont. at 193, 631 P.2d at 295).  A particularized suspicion does not require that the officer be certain that an offense has been committed.  *Henderson*, ¶ 12.  The State has the burden to show: 1) objective data from which an experienced officer can make certain inferences; and 2) a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing or was a witness to

9

criminal activity.  *Kleinsasser v. State*, 2002 MT 36, ¶ 12, 308 Mont. 325, ¶ 12, 42 P.3d 801, ¶ 12 (citing *Gopher*, 193 Mont at 194, 631 P.2d at 296).

¶21  In *Henderson,* a law enforcement officer made an investigatory stop because he could not read the letters of a temporary vehicle registration through the vehicle's tinted windows.  We concluded that the inability of an officer to see a registration sticker because it was displayed behind a tinted car window was sufficient to give rise to particularized suspicion that the vehicle was not properly registered and justified an investigatory stop. *Henderson*, ¶ 14.  Because the defendant did not respond to the officer's attempt to stop him for over two blocks, the scope of the officer's inquiry broadened to include particularized suspicion that the driver of the vehicle was under the influence. *Henderson*, ¶ 15.  In *Henderson*, we declined to address the issue of whether the temporary registration was "clearly displayed" in compliance with Montana law.  *Henderson*, ¶ 14.  We noted that the State produced substantial evidence that the officer who initiated the investigatory stop could not view the letters on the temporary tag because of the dark tinted windows. *Henderson*, ¶ 14.  In fact, the officer needed artificial illumination to read the tag through the window when he inspected the vehicle in spite of the fact the stop was made in broad daylight.  *Henderson*, ¶ 14.  Consequently, we concluded that the District Court misapprehended the effect of the evidence when it found that the officer had no reasonable grounds to suspect that an offense was being committed and reversed its

decision to suppress the evidence obtained as a result of the traffic stop. *Henderson*, ¶ 16.

¶22 The State argues that *Henderson* provides binding precedent in the present case because, like *Henderson*, Deputy Dominick could not see Lacasella's license plate and, therefore, had a particularized suspicion that the vehicle was being driven on state highways in violation of § 61-3-301, MCA. Furthermore, the State argues that the observations Deputy Dominick made when Lacasella stepped from his vehicle broadened the scope of the stop to include particularized suspicion that Lacasella was illegally driving while under the influence of alcohol, similar to the defendant's delayed response to the officer's lights in *Henderson*.

¶23 *Henderson* can be distinguished from the instant case for a number of reasons. First, we have concluded that the manner in which Lacasella's license plate was displayed in this case complies with Montana law , whereas we declined to make that determination in *Henderson*. We also note that the window in *Henderson* was so darkly tinted artificial illumination was required to read the letters in broad daylight - the law enforcement officer **could not** see the vehicle registration. In this case, the pictures indicate that the window was not tinted and the license plate was clearly visible from the outside. Given the benefit of the doubt, Deputy Dominick **did not** see the license plate. Even if the State's contention that glare could obscure the license plate from plain view at night is true, it produced no evidence that glare obscured the license plate from plain view in this case. Therefore, unlike

11

*Henderson*, the plate in the present case **could** be seen by a law enforcement officer.

¶24 Another important distinction between *Henderson* and the present case is the officer's understanding and application of the law to the facts. In *Henderson*, the officer's understanding of Montana law, was correct and he pulled the vehicle over because he could not see the temporary registration through the vehicle's tinted window. Lacasella contends that a law enforcement officer's belief that a person is involved in wrongdoing which is based upon a misunderstanding of the law cannot constitute particularized suspicion for a constitutional investigatory stop.

¶25 The State responds that what is known by the officer at the time of the stop dictates whether particularized suspicion existed and that particularized suspicion does not require certainty on the part of the officer that a crime has been committed. It argues that Deputy Dominick did not see a front license plate when Lacasella entered Highway 93. Therefore, based on what he knew at the time he initiated the stop, he had a reasonable suspicion that Lacasella was operating his vehicle in violation of § 61-3-301, MCA.

¶26 There is a legal distinction between a mistake of fact and a mistake of law. Deputy Dominick's knowledge of the law and his perception of the facts based upon that understanding is the question before this Court. This Court has not had the opportunity to consider whether particularized suspicion can exist when an investigatory stop is made based on a mistaken view of the law.

12

¶27 The incident report filed by Deputy Dominick states: "I observed that the truck had no front license plate . . . he showed his front plated [sic] that he had setting in his windshield.  I explained to him it needed to be mounted on the front bumper."  The State's response to Lacasella's motion  to suppress provides: "Deputy Dominick stopped the vehicle, which was driven by the Defendant, Gary Lacasella, and informed him that he had stopped him for not having his license plate mounted on his front bumper."  It is clear from the report that Deputy Dominick believed that § 61-3-301, MCA, required a license plate to be mounted to the bumper.  Furthermore, arguments made in the District Court indicate that Deputy Dominick believed that only the bumper and grill constitute the "front" of a vehicle, and a license plate mounted elsewhere did not comply with the law.  It is clear that Deputy Dominick, the State and the District Court misapprehended § 61-3-301, MCA.

¶28 In *United States v. Lopez-Soto* (9th Cir. 2000), 205 F.3d 1101, a California law enforcement officer stopped a vehicle because he believed that the law required the registration sticker to be displayed in a vehicle's rear window.  The officer pulled behind and along the side of the vehicle to determine if a registration sticker was properly displayed.  The officer initiated an investigatory traffic stop after determining there was no registration sticker displayed in the rear window.  California law, however, required that the sticker be displayed on the front window of the vehicle.  The Ninth Circuit stated:

> the traffic stop in the case before us was not objectively grounded in the governing law. . . .This cannot justify the stop under the Fourth Amendment.  Nor

13

is it possible to justify the stop objectively . . . with the facts available to Officer Hill when he made the stop: in his mistaken belief that Baja California law required the registration sticker to be visible from behind, Officer Hill did not check the windshield for the sticker.  The information that he did gather - that there was no sticker on the rear or left windows - did not make it any less likely that Lopez-Soto was operating his car in conformity with the law.

We have no doubt that Officer Hill held his mistaken view of the law in good faith, but there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law. [citation omitted] To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey.

*Lopez-Soto*, 205 F.3d at 1106.

¶29  In *United States v. Twilley* (9th Cir. 2000), 222 F.3d 1092, 1096, the Ninth Circuit revisited its holding in *Lopez-Soto* and stated that:

A suspicion based on such a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because 'the legal justification [for a traffic stop] must be objectively grounded.' [citation omitted].  In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment.

While the officer need not perfectly understand the law when he stops the vehicle, his observation must give him an objective basis to believe that the vehicle violates the law.

¶30  These cases stand for the proposition that observations made by an officer who does not understand the law are not objectively grounded in the law and, therefore, cannot be the basis for particularized suspicion.  In *Lopez-Soto*, the officer's observations were limited to those facts which he thought were

14

legally relevant pursuant to his understanding of the law. The Ninth Circuit held that those facts, which were based on a misapprehension of the law, could not give rise to a suspicion that the vehicle was in violation of the law and were not objectively grounded in the law. Similarly, Deputy Dominick thought that Montana law required a license plate to be displayed on Lacasella's bumper. Furthermore, he believed that the front of the vehicle was limited to the front bumper and grill of the vehicle. Based on this misunderstanding, he had no reason to look at Lacasella's windshield for a license plate and the State produced no evidence that he did.

¶31 The data upon which particularized suspicion was founded in this case was gathered based upon a clear misapprehension of the law. Deputy Dominick thought that Montana law required a license plate to be mounted on either the bumper or the grill of Lacasella's truck. The State produced no evidence that Deputy Dominick looked at Lacasella's windshield. Furthermore, based on his misunderstanding of the law, Deputy Dominick would have had no reason to look at the windshield once he determined there was no license plate on the bumper of the vehicle. However, the fact that there was no license plate on the bumper of Lacasella's vehicle provides no objective basis that the law was being violated. The pictures of the truck suggest that Deputy Dominick could have seen the license plate if he had looked at the window as well as the bumper of the vehicle.

¶32 Based on the facts presented in this case, we conclude that the observations made by Deputy Dominick were not objectively

15

grounded in Montana law because they were based upon a misunderstanding of the law. Therefore, Deputy Dominick did not have the objective data necessary to justify an investigatory stop. We hold that the investigatory stop made by Deputy Dominick was unlawful and that the evidence obtained subsequent to that stop should have been suppressed.

¶33 Finally, Lacasella maintains that the District Court erred when it held that even if Deputy Dominick had seen the license plate mounted on the windshield he was permitted to make an investigatory stop to determine if it was securely fastened. Law enforcement is not permitted to make an investigatory stop unless an officer observes objective data that gives rise to an inference that an individual is involved in wrongdoing. To hold as the District Court did would justify the investigatory stop of every vehicle in Montana. We conclude that the District Court erred when it held that if Deputy Dominick had seen the license plate in the window, he was permitted to make an investigatory stop to determine if the license plate was securely fastened.

¶34 For the foregoing reasons, we reverse the Order of the District Court which denied Lacasella's motion to suppress and remand to the District Court for further proceedings consistent with this Opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER

16

Justice W. William Leaphart dissenting.

¶35 I dissent.

¶36 Section 61-3-301, MCA, requires that a vehicle have the proper number of plates "conspicuously displayed, one on the front and one on the rear of the vehicle . . . ." The Court, relying on daytime pictures in which the plate, taped to the windshield, was visible from outside the car, concludes that there was no evidence that the plate was obscured by glare on the night in question. Finally the Court reasons that, due to Officer Dominick's mistaken belief that a license plate had to be displayed on the bumper, he "had no reason to look at the windshield."

¶37 "Conspicuous" is defined as follows: "Easy to notice; obvious . . . noticeable." American Heritage Dictionary of the English Language, Third Edition, 1992. If the license plate had been displayed in a *conspicuous* position, it would have been obvious and noticeable to Officer Dominick without his having "to look for it." Officer Dominick's report indicates that, "I observed that the truck had no front license plate . . . ." This is uncontroverted evidence that the plate was not conspicuously displayed on the night in question. Officer Dominick had particularized suspicion to initiate a stop of Lacasella's vehicle. I would affirm the decision of the District Court.

/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray concurs in the dissent of Justice Leaphart.

/S/ KARLA M. GRAY

Justice Jim Rice dissenting.

17

¶38    I join Justice Leaphart's dissent and also dissent because I believe the Court has erroneously interpreted the statute at issue.

¶39    Section 61-3-301, MCA, requires that a vehicle must have "the proper number of plates, conspicuously displayed, one on the front and one on the rear . . . ."  The Court reasons that our only function when interpreting statutes "is to give effect to the intent of the legislature," and concludes that the statute "simply requires that license plates *be visible* from both the front and the rear of the vehicle."

¶40    First, our duty in interpreting statutes is to apply the plain meaning, if unambiguous.  Here, it is not necessary to discern legislative intent or otherwise look beyond the words of § 61-3-301, MCA.  The plain meaning of the words requires a license plate to be conspicuously displayed "on the front" of the vehicle.  The statute does not create a test for visibility from the front of a vehicle.  It requires attachment of the plate "on the front."  Lacasella's plate was not attached "on the front" of his pick-up truck, and he therefore violated the statute.  I would affirm.

_____
                Justice

18