JUSTICE NELSON
concurs.
¶22 I concur in the Court’s Opinion. I write separately to address two points.
¶23 First, ¶ 11 of the Court’s Opinion cites correctly the test which we set out in State v. Gopher, 193 Mont. 189, 631 P.2d 293 (1981). However, we recently refined that test with respect to the “experienced officer” prong. In Brown v. State, 2009 MT 64, 349 Mont. 408, 203 P.3d 842, after tracing the history of the particularized suspicion test, we adopted the following standard:
[W]e hold that, henceforth, for a peace officer to have particularized suspicion or reasonable grounds for an investigatory stop, the peace officer must be possessed of: (1) objective data and articulable facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. While a peace officer’s experience and training may be a factor in determining what sort of reasonable inferences he or she is entitled to make from his or her objective observations, experience and training will not necessarily be the defining element of the test. For example, a rookie peace officer on his or her first patrol may well be entitled to make an investigatory stop of a vehicle at 2:00 a.m. that is driving slowly, without lights, and is weaving across the center line and fog lines. That same peace officer, however, might not be entitled to make reasonable inferences resulting in particularized suspicion or *410 reasonable grounds to stop under circumstances which are demonstrably beyond his or her training or experience. The courts will look to the facts and to the totality of the circumstances of each case.
Brown, ¶ 20; accord State v. Cybulski, 2009 MT 70, ¶¶ 24-26, 349 Mont. 429, 204 P.3d 7. Applying the Brown test here, I agree that, based on the totality of circumstances of this case, Officer Morgan had sufficient particularized suspicion to effect the stop of Rutherford’s pickup. That said, I turn to my next point.
¶24 As part of Officer Morgan’s particularized suspicion, he testified that he relied secondarily on the fact that Rutherford’s rear license plate was partially obscured by the vehicle’s trailer hitch. The District Court judge referred to this justification as “somewhat of a red herring.” Indeed, this Court has discounted this evidence as well. Opinion, ¶ 18.1 agree.
¶25 However, and more to the point, I cannot conclude that the obscured license plate provided any particularized suspicion whatsoever for the stop of Rutherford’s vehicle. If we allow peace officers to stop the vehicles of Montanans for having rear license plates partially obscured by trailer hitches-or worse, wholly obscured by snow, mud, dust and dirt-we will be facilitating a significant abuse of drivers’ rights of individual privacy and freedom from unreasonable searches and seizures.
¶26 In saying this, I am cognizant of the State’s arguments on brief and its citation to § 61-3-301, MCA,[1] and to our decision in State v. Lacasella, 2002 MT 326, 313 Mont. 185, 60 P.3d 975. Section 61-3-301, MCA, requires that vehicle license plates be “conspicuously displayed.” Section 61-3-301(l)(a), MCA. “Conspicuously displayed” is defined by the statute to require that the vehicle license plates be “obviously visible and firmly attached to” the bumpers or in another clearly visible location. Section 61-3-301(4), MCA. In Lacasella, we cited to the statute and concluded that this law “simply requires that license plates be visible from both the front and the rear of a vehicle.” Lacasella, ¶ 16. We specifically did not address the question of whether the statute was violated if an otherwise “visible” license plate was “obscured.” Lacasella, ¶ 18.
*411 ¶27 Here, it is undisputed that Rutherford’s rear license plate was “conspicuously displayed” and “clearly visible.” There is nothing in § 61-3-301, MCA, or in Lacasella that leads me to the conclusion that an otherwise “conspicuously displayed” and “clearly visible” license plate ceases to be that if the numbers are “obscured” by a trailer hitch, mud, snow, dust, or dirt. If that is the case, then few drivers in this State will be free from a peace officer’s discretionary investigatory stop, given the number of vehicles with trailer hitches and given weather, seasonal road conditions, and the number of dirt and farm roads on which we all drive. “Obscured” license plates are a fact of life; we all have them at one time or another. In my view, a peace officer effecting an investigatory stop needs more particularized suspicion of criminal activity than that afforded by an “obscured” license plate which is otherwise attached to the vehicle in accordance with § 61-3-301, MCA.
¶28 Since Officer Morgan had sufficient particularized suspicion, notwithstanding that Rutherford’s license plate numbers were “partially obscured,” I agree that his stop was conducted in accordance with the law.
¶29 I concur.

 I refer to the 2005 version of the Montana Code, inasmuch as Rutherford’s offense was committed on April 14, 2007, and before the effective date of the 2007 amendments to § 61-3-301, MCA. See Complier’s Comments to the 2007 version of this statute.