Justice SOTOMAYOR, dissenting.
The Court is, of course, correct that " 'the ultimate touchstone of the Fourth Amendment is "reasonableness." ' " Riley v. California,573 U.S. ----, ----, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014). But this broad statement simply sets the standard a court is to apply when it conducts its inquiry into whether the Fourth Amendment has been violated. It does not define the categories of inputs that courts are to consider when assessing the reasonableness of a search or seizure, each of which must be independently justified. What this case requires us to decide is whether a police officer's understanding of the law is an input into the reasonableness inquiry, or whether this inquiry instead takes the law as a given and assesses an officer's understanding of the facts against a fixed legal yardstick.
I would hold that determining whether a search or seizure is reasonable requires evaluating an officer's understanding of the facts against the actual state of the law. I would accordingly reverse the judgment of the North Carolina Supreme Court, and I respectfully dissent from the Court's contrary holding.
I
It is common ground that Heien was seized within the meaning of the Fourth Amendment. Such a seizure comports with the Constitution only if the officers had articulable and reasonable suspicion that Heien was breaking the law. In Ornelas v. United States,517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), we explained that the "principal components" of that determination "will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." We described this kind of determination as "a mixed question of law and fact": " '[T]he issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " Id.,at 696-697, 116 S.Ct. 1657(quoting Pullman-Standard v. Swint,456 U.S. 273, 289, n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). What matters, we said, are the facts as viewed by an objectively reasonable officer, and the rule of law-not an officer's conception of the rule of law, and not even an officer's reasonable misunderstanding about the law, but the law.
As a result, when we have talked about the leeway that officers have in making probable-cause determinations, we have focused on their assessments of facts. See, e.g.,Terry v. Ohio,392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)(framing *543 the question as whether the "facts" give rise to reasonable suspicion). We have conceded that an arresting officer's state of mind does not factor into the probable-cause inquiry, "except for the factsthat he knows." Devenpeck v. Alford,543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)(emphasis added). And we have said that, to satisfy the reasonableness requirement, "what is generally demanded of the many factual determinationsthat must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable." Illinois v. Rodriguez,497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)(emphasis added). There is scarcely a peep in these cases to suggest that an officer's understanding or conception of anything other than the facts is relevant.
This framing of the reasonableness inquiry has not only been focused on officers' understanding of the facts, it has been justified in large part based on the recognition that officers are generally in a superior position, relative to courts, to evaluate those facts and their significance as they unfold. In other words, the leeway we afford officers' factual assessments is rooted not only in our recognition that police officers operating in the field have to make quick decisions, see id.,at 186, 110 S.Ct. 2793, but also in our understanding that police officers have the expertise to "dra[w] inferences and mak[e] deductions ... that might well elude an untrained person." United States v. Cortez,449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). When officers evaluate unfolding circumstances, they deploy that expertise to draw "conclusions about human behavior" much in the way that "jurors [do] as factfinders." Ibid.(emphasis added).
The same cannot be said about legal exegesis. After all, the meaning of the law is not probabilistic in the same way that factual determinations are. Rather, "the notion that the law is definite and knowable" sits at the foundation of our legal system. Cheek v. United States,498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). And it is courts, not officers, that are in the best position to interpret the laws.
Both our enunciation of the reasonableness inquiry and our justification for it thus have always turned on an officer's factual conclusions and an officer's expertise with respect to those factual conclusions. Neither has hinted at taking into account an officer's understanding of the law, reasonable or otherwise.
II
Departing from this tradition means further eroding the Fourth Amendment's protection of civil liberties in a context where that protection has already been worn down. Traffic stops like those at issue here can be "annoying, frightening, and perhaps humiliating." Terry,392 U.S., at 25, 88 S.Ct. 1868; see Delaware v. Prouse,440 U.S. 648, 657, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). We have nevertheless held that an officer's subjective motivations do not render a traffic stop unlawful. Whren v. United States,517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). But we assumed in Whrenthat when an officer acts on pretext, at least that pretext would be the violation of an actual law. See id.,at 810, 116 S.Ct. 1769(discussing the three provisions of the District of Columbia traffic code that the parties accepted the officer had probable cause to believe had been violated). Giving officers license to effect seizures so long as they can attach to their reasonable view of the facts some reasonable legal interpretation (or misinterpretation) that suggests a law has been violated significantly expands this authority. Cf.
*544 Barlow v. United States,7 Pet. 404, 411, 8 L.Ed. 728 (1833)(Story, J.) ("There is scarcely any law which does not admit of some ingenious doubt"). One wonders how a citizen seeking to be law-abiding and to structure his or her behavior to avoid these invasive, frightening, and humiliating encounters could do so.
In addition to these human consequences-including those for communities and for their relationships with the police-permitting mistakes of law to justify seizures has the perverse effect of preventing or delaying the clarification of the law. Under such an approach, courts need not interpret statutory language but can instead simply decide whether an officer's interpretation was reasonable. Indeed, had this very case arisen after the North Carolina Supreme Court announced its rule, the North Carolina Court of Appeals would not have had the occasion to interpret the statute at issue. Similarly, courts in the Eighth Circuit, which has been the only Circuit to include police mistakes of law in the reasonableness inquiry, have observed that they need not decide interpretive questions under their approach. See, e.g.,United States v. Rodriguez-Lopez,444 F.3d 1020, 1022-1023 (C.A.8 2006).[1]This result is bad for citizens, who need to know their rights and responsibilities, and it is bad for police, who would benefit from clearer direction. Cf. Camreta v. Greene,563 U.S. ----, ---- - ----, 131 S.Ct. 2020, 2031-32, 179 L.Ed.2d 1118 (2011)(recognizing the importance of clarifying the law).
Of course, if the law enforcement system could not function without permitting mistakes of law to justify seizures, one could at least argue that permitting as much is a necessary evil. But I have not seen any persuasive argument that law enforcement will be unduly hampered by a rule that precludes consideration of mistakes of law in the reasonableness inquiry. After all, there is no indication that excluding an officer's mistake of law from the reasonableness inquiry has created a problem for law enforcement in the overwhelming number of Circuits which have adopted that approach. If an officer makes a stop in good faith but it turns out that, as in this case, the officer was wrong about what the law proscribed or required, I know of no penalty that the officer would suffer. See 366 N.C. 271, 286-288, 737 S.E.2d 351, 361-362 (2012)(Hudson, J., dissenting) (observing that "officers (rightfully) face no punishment for a stop based on a mistake of law"). Moreover, such an officer would likely have a defense to any civil suit on the basis of qualified immunity. See Ashcroft v. al-Kidd,563 U.S. ----, ----, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011)("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions").
Nor will it often be the case that any evidence that may be seized during the stop will be suppressed, thanks to the exception to the exclusionary rule for good-faith police errors. See, e.g., *545 Davis v. United States,564 U.S. ----, ---- - ----, 131 S.Ct. 2419, 2427-28, 180 L.Ed.2d 285 (2011). It is true that, unlike most States, North Carolina does not provide a good-faith exception as a matter of state law, see State v. Carter,322 N.C. 709, 721-724, 370 S.E.2d 553, 560-562 (1988), but North Carolina recognizes that it may solve any remedial problems it may perceive on its own, see id.,at 724, 370 S.E.2d, at 562; N.C. Gen.Stat. Ann. § 15A-974 (2013)(statutory good-faith exception).[2]More fundamentally, that is a remedial concern, and the protections offered by the Fourth Amendment are not meant to yield to accommodate remedial concerns. Our jurisprudence draws a sharp "analytica[l] distinct[ion]" between the existence of a Fourth Amendment violation and the remedy for that violation. Davis,564 U.S., at ----, 131 S.Ct., at 2431.
In short, there is nothing in our case law requiring us to hold that a reasonable mistake of law can justify a seizure under the Fourth Amendment, and quite a bit suggesting just the opposite. I also see nothing to be gained from such a holding, and much to be lost.
III
In reaching the contrary conclusion, the Court makes both serious legal and practical errors. On the legal side, the Court barely addresses Ornelasand the other cases that frame the reasonableness inquiry around factual determinations. Instead, in support of its conclusion that reasonable suspicion "arises from the combination of an officer's understanding of the facts andhis understanding of the relevant law," ante,at 536 (emphasis added), the Court first reaches to founding-era customs statutes and cases applying those statutes. It concedes, however, that these cases are "not directly on point" because they say nothing about the scope of the Fourth Amendment and are instead equivalents of our modern-day qualified immunity jurisprudence for civil damages. Ante,at 537.
The only link in the tenuous chain the Court constructs between those cases and this one that has anything to say about the Fourth Amendment is Brinegar v. United States,338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). See ante, at 537 - 538. But all that our opinion in Brinegaractually says is that probable cause exists where " 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." 338 U.S., at 175-176, 69 S.Ct. 1302(quoting Carroll v. United States,267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). It thus states the uncontroversial proposition that the probable-cause inquiry looks to *546 the reasonableness of an officer's understanding of the facts. Indeed, Brinegaris an odd case for the Court to rely on given that, like the cases I discussed above, it subsequently emphasizes that "the mistakes must be those of reasonable men, acting on factsleading sensibly to their conclusions of probability." 338 U.S., at 176, 69 S.Ct. 1302(emphasis added). Again, reasonable understandings of the facts, not reasonable understandings of what the law says.[3]
Further, the Court looks to our decision in Michigan v. DeFillippo,443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). This is a Fourth Amendment case, but the Court's reading of it imagines a holding that is not rooted in the logic of the opinion. We held in DeFillippothat an officer had probable cause to support an arrest even though the ordinance that had allegedly been violated was later held by the Michigan Court of Appeals to be unconstitutional. This was so, we explained, because the officer conducted an arrest after having observed conduct that was criminalized by a presumptively valid law at the time of that conduct. See id., at 37, 99 S.Ct. 2627("At th[e] time [of the arrest], of course, there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance"). We noted that it would have been wrong for that officer not to enforce the law in that situation. See id.,at 38, 99 S.Ct. 2627("Police are charged to enforce laws until and unless they are declared unconstitutional.... Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement").
DeFillippothus did not involve any police "mistake" at all. Rather, DeFillippoinvolved a police officer correctly applying the law that was then in existence and that carried with it a presumption of validity. Here, by contrast, police stopped Heien on suspicion of committing an offense that never actually existed. Given that our holding in DeFillipporelied so squarely on the existence of a law criminalizing the defendant's conduct, and on the presumption of validity that attends actual laws, it can hardly be said to control where, as here, no law ever actually criminalized Heien's conduct.
On the practical side, the Court primarily contends that an officer may confront "a situation in the field as to which the application of a statute is unclear." Ante,at 539. One is left to wonder, however, why an innocent citizen should be made to shoulder the burden of being seized whenever the law may be susceptible to an interpretive question. Moreover, the Court fails to reconcile its belief that the Fourth Amendment gives officers leeway to address situations where the application of a criminal statute may be unclear with our prior assumption that the Fourth Amendment does not give officers such leeway where they rely on a statute that authorizes police conduct that may violate the Fourth Amendment. See Illinois v. Krull,480 U.S. 340, 355, n. 12, 359, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). Nor does it engage with the analytic consequences of North Carolina's similar concession that it does not mean to claim *547 "that an officer's mistaken understanding of the Fourth Amendment itself can support a seizure if that understanding was reasonable." Brief for Respondent 29. It is not clear why an officer's mistaken understanding of other laws should be viewed differently.
While I appreciate that the Court has endeavored to set some bounds on the types of mistakes of law that it thinks will qualify as reasonable, and while I think that the set of reasonable mistakes of law ought to be narrowly circumscribed if they are to be countenanced at all, I am not at all convinced that the Court has done so in a clear way. It seems to me that the difference between qualified immunity's reasonableness standard-which the Court insists without elaboration does not apply here-and the Court's conception of reasonableness in this context-which remains undefined-will prove murky in application. See ante,at 539 - 540. I fear the Court's unwillingness to sketch a fuller view of what makes a mistake of law reasonable only presages the likely difficulty that courts will have applying the Court's decision in this case.
* * *
To my mind, the more administrable approach-and the one more consistent with our precedents and principles-would be to hold that an officer's mistake of law, no matter how reasonable, cannot support the individualized suspicion necessary to justify a seizure under the Fourth Amendment. I respectfully dissent.

The dissent contends that "the tolerance of mistakes of law in cases like Riddlewas a result of the specific customs statute that Congress had enacted." Post,at 546, n. 3 (citing The Apollon,9 Wheat. 362, 373, 6 L.Ed. 111 (1824) (Story, J.)). The relevant portion of The Apollon,however, addressed "the effectof probable cause," not what gave rise to it. Id.,at 372 (emphasis added); see id.,at 376 (finding it "unnecessary" to decide whether probable cause existed because it "would not, under the circumstances of this case, constitute a valid defence"). Justice Story understandably did not cite Riddleor discuss its tolerance of mistakes of law anywhere in The Apollon.

Every other Circuit to have squarely addressed the question has held that police mistakes of law are not a factor in the reasonableness inquiry. See United States v. Miller,146 F.3d 274, 279 (C.A.5 1998); United States v. McDonald,453 F.3d 958, 962 (C.A.7 2006); United States v. King,244 F.3d 736, 741 (C.A.9 2001); United States v. Nicholson,721 F.3d 1236, 1244 (C.A.10 2013); United States v. Chanthasouxat,342 F.3d 1271, 1279-1280 (C.A.11 2003). Five States have agreed. See Hilton v. State,961 So.2d 284, 298 (Fla.2007); State v. Louwrens,792 N.W.2d 649, 652 (Iowa 2010); Martin v. Kansas Dept. of Revenue,285 Kan. 625, 637-639, 176 P.3d 938, 948 (2008); State v. Anderson,683 N.W.2d 818, 823-824 (Minn.2004); State v. Lacasella,313 Mont. 185, 193-195, 60 P.3d 975, 981-982 (2002).

In addition to North Carolina, it appears that 13 States do not provide a good-faith exception. See State v. Marsala,216 Conn. 150, 151, 579 A.2d 58, 59 (1990); Dorsey v. State,761 A.2d 807, 814 (Del.2000); Gary v. State,262 Ga. 573, 574-575, 422 S.E.2d 426, 428 (1992); State v. Guzman,122 Idaho 981, 998, 842 P.2d 660, 677 (1992); State v. Cline,617 N.W.2d 277, 283 (Iowa 2000), abrogated on other grounds by State v. Turner,630 N.W.2d 601 (Iowa 2001); Commonwealth v. Upton,394 Mass. 363, 370, n. 5, 476 N.E.2d 548, 554, n. 5 (1985); State v. Canelo,139 N.H. 376, 383, 653 A.2d 1097, 1102 (1995); State v. Johnson,168 N.J. 608, 622-623, 775 A.2d 1273, 1281-1282 (2001); State v. Gutierrez,116 N.M. 431, 432, 863 P.2d 1052, 1053 (1993); People v. Bigelow,66 N.Y.2d 417, 427, 497 N.Y.S.2d 630, 488 N.E.2d 451, 457-458 (1985); Commonwealth v. Edmunds,526 Pa. 374, 376, 586 A.2d 887, 888 (1991); State v. Oakes,157 Vt. 171, 173, 598 A.2d 119, 121 (1991); State v. Afana,169 Wash.2d 169, 184, 233 P.3d 879, 886 (2010); see also People v. Krueger,175 Ill.2d 60, 61, 76, 221 Ill.Dec. 409, 675 N.E.2d 604, 606, 612 (1996)(limiting the exception to situations where police have a warrant).

The Court in fact errs even earlier in the chain when it represents United States v. Riddle,5 Cranch 311, 3 L.Ed. 110 (1809), as containing some broad proposition. Ante,at 544 - 545. As Justice Story explained in a later case, the tolerance of mistakes of law in cases like Riddlewas a result of the specific customs statute that Congress had enacted. The Apollon,9 Wheat. 362, 373, 6 L.Ed. 111 (1824)(explaining that findings of probable cause "ha[d] never been supposed to excuse any seizure, exceptwhere some statute creates and defines the exemption from damages" (emphasis added)).