No. 02-419

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 104

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

DAVID ANTHONY VAN DORT,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DC-01-26,
Honorable Marc G. Buyske, Presiding

COUNSEL OF RECORD:

        For Appellant:

        Terryl T. Matt, Attorney at Law, Cut Bank, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

        Larry D. Epstein, County Attorney, Cut Bank, Montana

Submitted on Briefs:  January 9, 2003

Decided:  April 24, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     David Anthony Van Dort appeals from the December 14, 2001, Order of the Ninth Judicial District Court, Glacier County, denying his motion to suppress. We reverse.

¶2     The following issues are raised on appeal:

¶3     (1) Whether the District Court erred when it concluded that Van Dort was not unlawfully arrested; and

¶4     (2) Whether Van Dort's subsequent Mirandized confession was admissible.

BACKGROUND

¶5     Van Dort was stopped by Glacier County Deputy Josh Olson while traveling west from Cut Bank, Montana, on U.S. Highway 2. Deputy Olson earlier received a report that the driver of a vehicle similar to Van Dort's had stolen gas from the West End Town Pump in Cut Bank. Olson ran a warrant check on Van Dort and his passenger, Joseph Hawley, and discovered that there was a warrant in Missoula County for Hawley's arrest. By mistake, Olson arrested Van Dort. Then, recognizing the mistake, Olson released Van Dort and arrested Hawley. While conducting a pat-down search of Hawley for weapons, Olson found a quantity of methamphetamine and a glass pipe used for ingesting methamphetamine concealed in Hawley's clothes.

¶6     Deputy Olson called Officers Barry and Kraft for assistance in securing Van Dort's vehicle so that he could apply for a warrant to search for additional contraband. Officer Barry placed Hawley in the backseat of his patrol car, and Deputy Kraft escorted Van Dort, in handcuffs, to a second patrol car. Deputy Olson advised Van Dort that he was not under

arrest, but that he wanted to talk with Van Dort, and that they would all go to the sheriff's office in Cut Bank. The officers transported both Hawley and Van Dort to the Glacier County jail.

¶7 Van Dort was placed in an interview room at approximately 6:30 p.m. Deputy Olson then entered the room and informed Van Dort that he was free to go, but that he wanted to ask Van Dort a few questions. Olson read Van Dort his Miranda rights, and then proceeded to interview Van Dort for two hours. At the end of the interview, Van Dort confessed to using methamphetamine earlier that day.

¶8 Van Dort was charged by Information with criminal possession of dangerous drugs (methamphetamine) in violation of § 45-9-102(1), MCA. Van Dort filed a motion to suppress his confession, arguing that Olson did not have probable cause to make the arrest, and that all evidence obtained as a result of the arrest should be suppressed. The District Court denied the motion, and Van Dort subsequently pled guilty to the charge. He now appeals the District Court's decision.

STANDARD OF REVIEW

¶9 Our standard of review of a trial court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those facts were correctly applied as a matter of law. A trial court's findings are clearly erroneous if the findings are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *See State v. Lacasella*, 2002 MT 326, ¶ 10, 313 Mont. 185, ¶ 10, 60 P.3d 975, ¶ 10 (citations omitted).

3

DISCUSSION

¶10 Van Dort argues, generally, that his confession should have been suppressed because it was obtained as a result of an unlawful arrest. Therefore, our analysis of Van Dort's claim involves two inquiries: first, whether Van Dort's detention amounted to an unlawful warrantless arrest; and, second, whether his subsequent confession, which was obtained as a result of that arrest, should be suppressed.

Issue One

¶11 There is considerable disagreement between the parties regarding the nature of Van Dort's detention. Van Dort contends that he was arrested and that in the absence of a warrant or a showing of probable cause, the arrest was unlawful. The State asserts that Van Dort was merely seized pursuant to the investigatory stop of his vehicle (requiring only a particularized suspicion), and that because Deputy Olson discovered Hawley's methamphetamine, Olson and Officers Kraft and Barry acted reasonably when they transported Van Dort, in handcuffs, to the county jail for questioning.

¶12 The definition of an arrest is codified at § 46-6-104, MCA. According to that section, "[a]n arrest is made by an actual restraint of the person to be arrested or by the person's submission to the custody of the person making the arrest." Section 46-6-104, MCA. In *State v. Thorton* (1985), 218 Mont. 317, 322-23, 708 P.2d 273, 277, we adopted a three-part test for determining whether an arrest has occurred, stating that "[a]n arrest involves three elements: (1) authority to arrest; (2) assertion of that authority with intention to affect [sic] an arrest; and (3) restraint of the person arrested." In the present case, the first and third

4

elements are easily satisfied. Clearly, Deputy Olson had the authority to arrest Van Dort. In turn, Van Dort was handcuffed, placed in the backseat of Deputy Olson's patrol car, and brought to the police station, where he remained until his interrogation.

¶13    The central question, for purposes of this analysis, is whether there was an assertion of authority to arrest with intent to effect the arrest. The District Court concluded that because Deputy Olson informed Van Dort that he was not under arrest, this second element of the *Thorton* test is not satisfied. This reasoning is too restrictive, in that it focuses solely on Olson's words to the exclusion of his conduct and the circumstances of Van Dort's detention. The Ninth Circuit Court of Appeals recently considered this issue in *United States v. Bravo* (9th Cir. 2002) 295 F.3d 1002, 1011, and held that "an officer cannot negate a custodial situation simply by telling a suspect that he is not under arrest." According to the court of appeals, such an affirmation is only one factor within the totality of the circumstances to be considered in the analysis of an arrest.

¶14    *Bravo* is consistent with those Montana decisions, such as *Thorton*, which demonstrate this Court's reluctance to elevate the technical requirements of an arrest over other relevant factors. According to *Thorton*, an arrest has been accorded a broad definition, which applies if a "reasonable person, innocent of any crime, would have felt free to walk away under the circumstances." *Thorton*, 218 Mont. at 323, 708 P.2d at 277-78. *Thorton* also states that "[t]his standard drops any technical requirements for an arrest and the concept of restraint, and instead looks upon all the facts and circumstances of each case." *Thorton*, 218 Mont. at 323, 708 P.2d at 278.

5

¶15    Here, the circumstances, and particularly the conduct of the officers, suggest that a reasonable person, innocent of any crime, would have believed that he was under arrest, despite Deputy Olson's statement to the contrary. Intending to arrest Hawley, Deputy Olson mistakenly arrested Van Dort. Recognizing his mistake, Olson then released Van Dort and arrested Hawley. Deputy Kraft then handcuffed Van Dort and escorted him to a patrol car. The officers transported both Hawley and Van Dort to the Glacier County jail. Van Dort was placed in an interview room where he remained until Deputy Olson entered the room and indicated that he wanted to ask Van Dort a few questions. Olson then proceeded with the interrogation, which ultimately led to Van Dort's confession.

¶16    To rely on Deputy Olson's statement as dispositive of this issue would be to undermine the reasonable person standard of *Thorton* which, by necessity, requires consideration of a variety of factors including an officer's actions. Here, these factors indicate that the requirement of an assertion of authority to arrest is satisfied. All three of the *Thorton* factors having been met, we conclude that Van Dort was, in fact, placed under arrest.

¶17    The remaining question is whether Van Dort's arrest was lawful. The District Court characterized Van Dort's detention as a seizure occasioned by an investigatory traffic stop, and concluded that Deputy Olson had a sufficient particularized suspicion to make the stop, and that it was "reasonable" to continue to detain Van Dort once Olson discovered that Hawley possessed methamphetamine. With respect to the traffic stop, the District Court's analysis is correct. Deputy Olson had a particularized suspicion that Van Dort had stolen

6

gasoline. His suspicion was based on a report that the driver of a vehicle similar to Van Dort's had failed to pay for gasoline before leaving the service station.

¶18 With respect to Van Dort's continued detention, the District Court's analysis is problematic. Based on its conclusion that Van Dort was not arrested, but merely seized, the District Court reviewed the continued detention to determine whether it was reasonable. However, concluding, as we have, that Van Dort was subjected to more than a mere seizure, the appropriate standard for evaluating the constitutionality of Van Dort's detention is not for "reasonableness," but for probable cause.

¶19 Pursuant to the Fourth Amendment to United States Constitution and Article II, Section 11, of the Montana Constitution, a warrantless arrest requires probable cause. Section 46-6-311(1), MCA, provides that "[a] peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest." We have stated that probable cause to arrest exists when the facts and circumstances within a police officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense. *State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, ¶ 12, 965 P.2d 231, ¶ 12. Furthermore, probable cause is evaluated in the light of a police officer's knowledge, and all the relevant circumstances. *Williamson*, ¶ 12. Although probable cause does not require evidence sufficient to prove a person's guilt,

7

the standard involves something more than an officer's mere suspicion of criminal activity. *Williamson*, ¶ 12.

¶20     Expanding upon this general definition, we noted, in *State v. Nalder*, 2001 MT 270, ¶ 15, 307 Mont. 280, ¶ 15, 37 P.3d 661, ¶ 15, that an individual's presence at the scene of a crime does not justify an arrest. Rather, probable cause for an arrest requires an existing connection between the individual and the particular criminal activity. *Nalder*, ¶ 15. *Nalder* is controlling in the present case, where the record suggests that Deputy Olson arrested Van Dort not on the reasonable belief that Van Dort had used drugs, but because his passenger, Hawley, possessed methamphetamine. Deputy Olson informed Van Dort that he was not under arrest, and that he only wanted to talk to Van Dort about Hawley's drugs. As the District Court noted, it was within the context of Hawley's possession of these drugs that Van Dort was detained.

¶21     Olson may have suspected that Van Dort had used methamphetamine, and we might speculate that the officers brought Van Dort to the police station for purposes of eliciting a confession. However, an objective review of the record demonstrates that, at the time of Van Dort's arrest, there was no evidence to support a reasonable belief that Van Dort had used drugs. Thus, we conclude that all the relevant circumstances, viewed in light of the officers' training, were insufficient to establish probable cause for Van Dort's arrest. The District Court erred when it concluded that Van Dort was not unlawfully arrested.

Issue Two

8

¶22     Having concluded that Van Dort was subjected to an unlawful arrest, we next consider the legitimacy of his subsequent confession.  Van Dort argues that even though he received Miranda warnings before confessing, those warnings, alone, were insufficient to sever the causal connection between the confession and the arrest.

¶23     The effect of an unlawful arrest on the admissibility of a subsequent confession was first addressed by this Court in *State v. Beach* (1985), 217 Mont. 132, 705 P.2d 94, abrogated on other grounds by *State v. Cope* (1991), 250 Mont. 387, 819 P.2d 1280.   In *Beach*, we adopted the federal rule set forth in *Brown v. Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416.  We stated that, as a general principle, a confession obtained as a result of an unlawful arrest is inadmissible.  However, there must be a causal connection between the illegal arrest and the confession.  *Beach*, 217 Mont. at 147, 705 P.2d at 104. When considering whether such a connection exists, we consider the following four factors: (1) the presence or absence of timely Miranda warnings; (2) whether there was an intervening independent act by the defendant or some third party; (3) the temporal proximity of the arrest and confession; and (4) the degree of the alleged constitutional violation. *Beach*, 217 Mont. at 148, 705 P.2d at 104.

¶24     The defendant in *Beach* was arrested in Louisiana in connection with multiple homicides, one of which had taken place in Poplar, Montana.  Beach was incarcerated for several days following his arrest and, during that time, was subjected to a series of interrogations.  As a result of those interrogations, Beach confessed to the Montana murder. Beach was extradited to Montana and was tried and convicted in Valley County.  *Beach*, 217

9

Mont. at 138-41, 705 P.2d at 98-100. On appeal, Beach challenged the admissibility of his confession, arguing that because his arrest was unlawful, his subsequent statements to police were inadmissible as fruit of the poisonous tree. *Beach*, 217 Mont. at 146, 705 P.2d at 103.

¶25 Applying *Brown*, we concluded that there was substantial evidence to support the trial court's ruling that Beach's confession was not the result of an exploitation of his unlawful arrest. We considered the following circumstances: (1) that Beach was given ten separate Miranda warnings, and waived his rights each time; (2) that Beach had confessed more than three days after his arrest, thus allowing sufficient time for the "unsettling affect" of the arrest to wear off; (3) that a death threat, which Beach had made against his mother while incarcerated, was an intervening factor that severed the causal connection between the arrest and the confession; and (4) that there was no flagrant misconduct on the part of the police. *Beach*, 217 Mont. at 148, 705 P.2d at 104.

¶26 In the present case, Van Dort relies not on *Beach*, but on its federal equivalent, *Brown*. This is understandable given that the circumstances of *Brown* are similar to those here. In that case, police officers met Brown at the front entrance of his apartment, handcuffed him, placed him in the backseat of a patrol car, and escorted him to a police station. *Brown*, 422 U.S. at 593, 95 S.Ct. at 2257. According to the officers, the arrest was necessary because they suspected that Brown had been involved in a murder. At the station, Brown was escorted to an interrogation room where he was left alone until the officers returned several minutes later. The officers warned Brown of his rights, and then questioned him about the murder. The interrogation continued for twenty-five minutes, at which time

10

Brown confessed. *Brown*, 422 U.S. at 594-95, 95 S.Ct. at 2257-58. The United States Supreme Court characterized this scenario as an "expedition for evidence in the hope that something might turn up." *Brown*, 422 U.S. at 605, 95 S.Ct. at 2262. The warrantless arrest was based not on probable cause, but on a hunch that Brown had committed a crime. The Court further noted that because the arrest and confession were separated by less than two hours, the Miranda warnings given by the police officers were insufficient to break the causal connection between the two events. *Brown*, 422 U.S. at 604-05, 95 S.Ct. at 2262. Thus, the Court suppressed Brown's confession despite the presence of Miranda warnings.

¶27 We agree with Van Dort that the facts of the present case resemble those of *Brown*, while *Beach* is distinguishable. Van Dort's arrest was effectuated without a warrant or probable cause, and appears to have been based solely on Deputy Olson's intuition. Deputy Olson arrested Van Dort on the chance that, under interrogation, Van Dort might admit to having used methamphetamine. As in *Brown*, the arrest, and the events that followed, amounted to no more than a fishing expedition by Olson. The arrest and Van Dort's subsequent confession were separated by only two hours and forty-five minutes. During that time, Van Dort was handcuffed and transported in a patrol car to the Glacier County jail. At the jail, he was placed in an interrogation room and then questioned for two hours. In *Beach*, by contrast, the arrest and confession were separated by a full three days. Van Dort, unlike Beach, had no time to overcome the unsettling effect of his arrest or at least gather his thoughts. In addition, Van Dort's conduct, unlike Beach's, was not so egregious as to justify his continued detention.

11

¶28 Furthermore, the Miranda warnings given by Deputy Olson did not sever the chain of causality between Van Dort's unlawful arrest and his confession. Generally, when determining whether a confession was lawfully obtained, courts place considerable emphasis on the presence of Miranda warnings. For example, we have stated that the presence of timely and complete Miranda warnings supports a finding of voluntariness. *State v. Scarborough*, 2000 MT 301, ¶ 33, 302 Mont. 350, ¶ 33, 14 P.3d 1202, ¶ 33. However, the presence of Miranda warnings is by no means determinative, particularly when a confession is obtained as the result of an unlawful arrest or some other constitutional infringement. Though generally suggestive of a constitutionally valid confession, Miranda warnings will not, in all cases, attenuate the corruptive effect of a prior constitutional violation. According to the United States Supreme Court in *Brown*,

> [i]f Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. Arrests made without [a] warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving Miranda warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a "cure-all," and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to "a form of words."

422 U.S. at 602-03, 95 S.Ct. at 2261 (citations omitted).

¶29 Five years before *Beach*, Justice Shea observed, in his concurrence to *State v. Allies* (1980), 186 Mont. 99, 146, 606 P.2d 1043, 1068 (concurring), abrogated on other grounds by *State v. Cope* (1991), 250 Mont. 387, 819 P.2d 1280, that where a confession stems from a prior unlawful arrest, it is necessary to determine whether, in light of all the relevant

12

circumstances, the confession was sufficiently removed from the constitutional infringement so that the defendant's statements are no longer tainted. Even though Allies received Miranda warnings, his confession was "inextricably connected to the illegal investigatory arrest . . . which secured the necessary condition of custody and isolation . . . ." *Allies*, 186 Mont. at 146, 606 P.2d at 1068. Thus, Justice Shea characterized the issuance of Miranda warnings as merely token compliance with the *Miranda* decision. *Allies*, 186 Mont. at 144, 606 P.2d at 1067.

¶30    Justice Shea's concurrence in *Allies* underscores the notion that Miranda warnings, alone, will not remove the taint of a prior constitutional infringement. It remains true, in the present case, that "we cannot isolate the Miranda warnings and thus legitimize what went on before." The two Miranda warnings given by Deputy Olson were insufficient to negate the cumulative effect of all the relevant circumstances leading to Van Dort's confession. For this reason, we conclude that, despite the issuance of Miranda warnings, Van Dort's confession was the result of the exploitation of his unlawful arrest.

## CONCLUSION

¶31    In summary, we hold that Van Dort's warrantless arrest was unlawful, and that his subsequent confession, which was obtained as a result of the exploitation of that arrest, is inadmissible as fruit of the poisonous tree. Therefore, the judgment of the District Court, denying Van Dort's motion to suppress, is reversed. The case is remanded to the District Court for further proceedings consistent with this decision.

13

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

Justice Jim Rice dissenting.

¶32 I dissent. Unfortunately, the Court has not considered all the facts of this matter, and thus, the law is not correctly applied. Because I conclude that Van Dort was not arrested, I would not apply the *Beach* analysis to determine if his subsequent confession had been improperly tainted by an unlawful arrest.

¶33 The Court sets forth the appropriate standard for determining whether an arrest has occurred, correctly stating that our three-part test is applied by assessing "all the facts and circumstances of each case." *Thorton*, 218 Mont. at 323, 708 P.2d at 277. However, despite the Court's assertion that it has considered all "relevant circumstances," the Court has failed to do so, focusing instead on a single fact–Deputy Olson's repeated statement to Van Dort that he was not under arrest –and finds that statement to be insufficient to dispel Van Dort's claim that Olson exerted authority to arrest him. Reviewing the entire record reveals a distinctly different picture than that portrayed by the Court.

¶34 The officers initiated the stop of Van Dort's vehicle 15 miles out of Cut Bank, in March, as darkness was falling. After arresting Hawley, and deciding to impound and search the vehicle upon obtaining a search warrant, officers were faced with the question of what to do with Van Dort. As Officer Olson testified, he had probable cause at that moment to arrest Van Dort for theft of the gasoline, but he wanted to complete his investigation before deciding on the charges. Thus, he advised Van Dort that he was not under arrest, but that

wanted to speak with him further.[1] As the District Court found, it was not reasonable that such questioning should occur "on the shoulder of Highway 2," 15 miles out of town.

¶35 Thus, the officers decided to transport Olson back to Cut Bank. Indeed, it would have been irresponsible, and incompatible with their public safety duties, for officers to have abandoned Van Dort at this location, especially during this time of day and year. However, because Olson was already transporting a reserve officer, a police dog, and some equipment, his vehicle could not accommodate another passenger. Thus, Van Dort had to be transported by Highway Patrolman Barry, who was assisting at the scene. Consequently, Van Dort was placed in the back of Patrolman Barry's vehicle–next to Hawley.[2] At that point, it became apparent that handcuffing was necessary, not just for officer safety, but for the safety of Van Dort and Hawley. As Officer Olson testified when asked why Van Dort was handcuffed: "[W]e didn't know what the reaction was going to be between the two defendants . . . we really didn't know how they were going to react towards each other. And we didn't have a vehicle there to transport Van Dort, other than the Highway Patrol vehicle."

¶36 Van Dort's transport to Cut Bank was a matter of security and safety of the defendants, and was not an arrest of Van Dort. While in the back of the patrol vehicle, Van Dort told Hawley that he (Van Dort) was not under arrest. Further, Van Dort testified that:

---

[1]Van Dort was later charged with theft of the gasoline.

[2]The Court incorrectly implies that Hawley and Van Dort were transported in different vehicles. *See* ¶ 6.

17

[Officer Olson] told me I was not under arrest, at that time. And at that time I got the feeling that I was being given a ride back to the police station since the vehicle was being impounded.

Nothing could better establish that Van Dort had not been placed under arrest. Not even Van Dort believed he was under arrest. At the Sheriff's Office, Van Dort was separated from Hawley, the handcuffs were taken off Van Dort and he was taken to an unlocked interview room while Officer Olson was arriving in a different vehicle. As the District Court found, Officer Olson began the interview by advising Van Dort that he was not under arrest, and that he was free to go, but that Olson would like to ask Van Dort some questions. Van Dort voluntarily agreed to stay and talk to Olson.

¶37 Not all citizen contacts with law enforcement involving transportation in a patrol car or conversation within a police station necessarily constitute an arrest. *Thorton* requires that "all of the facts and circumstances" of the matter be carefully considered. I believe the circumstances here contrast arrest procedures, and demonstrate that Van Dort had not been arrested. Although the Court correctly states that "[t]o rely on Deputy Olson's statement [to Van Dort that he was not under arrest] as dispositive of this issue would be to undermine the reasonable person standard of *Thorton*," there is much more to the issue here than Olson's statement. A review of the entirety of the circumstances reveals that Officer Olson's statement was merely an accurate reflection of those circumstances and of Van Dort's status.

¶38 For these reasons, I would affirm the District Court.

/S/ JIM RICE

18