**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Armando LOPEZ–SOTO, Defendant–Appellant.**

**No. 99–50201.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 2000

Decided March 8, 2000

---

Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Paul C. Johnson, Jr., Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: TROTT and W. FLETCHER, Circuit Judges, and MOLLOY,[1] District Judge.

W. FLETCHER, Circuit Judge:

Defendant-appellant Armando Lopez–Soto appeals from the district court's denial of his motion to suppress evidence that was the basis of his conviction. Because the police officer who discovered the evidence did so only after he had stopped Lopez–Soto's car without reasonable suspicion, we conclude that the stop violated the Fourth Amendment and that the evidence must be suppressed.

## I

On July 22, 1998, San Diego Police Officer Randall Hill was driving behind and to the left of Lopez–Soto's Mercury Grand Marquis as it headed northbound on Interstate 805. Officer Hill noticed that the car displayed license plates from Baja California, Mexico. Aware that California law requires foreign vehicles traveling on state roadways to be properly registered in their home jurisdictions, Officer Hill checked the car for a valid Baja California registration sticker.

According to affidavits submitted to the district court, Officer Hill had been instructed at the police academy that Baja California requires motorists to affix registration stickers in such a manner that they are visible from the rear of the vehicle. Officer Hill looked for a sticker on the rear window and on the left side windows, but he did not check the windshield. When he did not see a registration sticker, he stopped Lopez–Soto's car to investigate whether it was in fact properly registered.

Officer Hill approached Lopez–Soto's car from the right, leaned into the front passenger-side window, and asked Lopez–Soto for proof of registration. In response to Officer Hill's question, Lopez–Soto motioned to a piece of paper affixed to the rear window. Because the printing on the paper was light, Officer Hill could not make out the writing from outside the car. He therefore opened the right rear passenger-side door and leaned into the car to remove the paper for a closer look.[2] At this point, he was assailed with a pungent odor that he recognized as marijuana, and he noticed some foil-wrapped bricks sticking out from beneath the rear floor mats. His subsequent search of the car and its trunk revealed approximately 400 kilograms of marijuana.

Lopez–Soto was arrested and charged with possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Lopez–Soto moved to suppress the marijuana, arguing that it had been discovered in violation of the Fourth Amendment. The district court denied this motion. Lopez–Soto then entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. That appeal is now before us, and we reverse for the reasons set forth below.

## II

We review the district court's determination of reasonable suspicion or probable cause *de novo* and its underlying factual findings for clear error. *See Orne-*

---

1. Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

2. Lopez–Soto's attorney asked to inspect the paper and the car, but the government informed him that it could not locate this evidence. Apparently, it had sold the car at auction and lost the paper. It is now impossible to determine whether the paper affixed to the rear window, though not a sticker, was nonetheless valid proof of registration.

*las v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

■ Before reaching the question of the constitutionality of the stop in this case, we must first decide whether reasonable suspicion or the higher standard of probable cause is required to support an investigatory traffic stop under the Fourth Amendment. Lopez–Soto argues that the Supreme Court's decision in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), stands for the proposition that an officer must have probable cause to make a traffic stop. He relies on the Court's observation that, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810, 116 S.Ct. 1769.

Prior to *Whren,* it was settled law that reasonable suspicion is enough to support an investigative traffic stop. As the Supreme Court explained,

> the usual traffic stop is more analogous to a so-called *Terry* stop than to a formal arrest. Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion.

*Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (citations, footnotes, and internal quotations omitted). Likewise, in the context of a traffic stop, the Ninth Circuit has held that "[t]o detain a suspect, a police officer must have reasonable suspicion . . . ." *United States v. Michael R.,* 90 F.3d 340, 346 (9th Cir.1996); *see also* 4 Wayne R. LaFave, Search and Seizure § 9.4 n. 3 (3d ed.1996) (noting that the *Terry* standard applies to vehicle stops).

We do not believe that the Court in *Whren* intended to change this settled rule. The passage on which Lopez–Soto relies tells us only that probable cause is

sufficient to support a traffic stop, not that it is necessary. If the Supreme Court announced in *Whren* a new rule of law, as Lopez–Soto contends, we would expect it to have acknowledged the change and explained its reasoning. Such an explanation is notably absent from the *Whren* opinion. Instead, the facts of *Whren* involved speeding and failure to signal, and the parties agreed that, from these facts, the police had probable cause to make the disputed stop. *See* 517 U.S. at 810, 116 S.Ct. 1769. This threshold agreement allowed the *Whren* Court to address a different issue, namely the constitutional relevance of the officers' subjective intent in making the stop, to which the Court gave sustained attention. Given that probable cause was clearly satisfied on the facts before the Court in *Whren* and that the Court directed its focus elsewhere, we do not believe that the casual use of the phrase "probable cause" was intended to set a new standard.

Moreover, none of our sister circuits, either before or after *Whren,* has concluded that a traffic stop must be justified by more than reasonable suspicion. Where the facts before the court would satisfy both reasonable suspicion and probable cause, many of the more recent cases echo the language in *Whren* and simply analyze the facts for probable cause, *see, e.g., United States v. Sanders,* 196 F.3d 910, 913 (8th Cir.1999); *United States v. Brown,* 188 F.3d 860, 864 (7th Cir.1999); *United States v. Jones,* 185 F.3d 459, 464 (5th Cir.1999); *United States v. Wellman,* 185 F.3d 651, 656 (6th Cir.1999), but none of these cases suggests that probable cause is the minimum threshold for constitutionally permissible police action in making a traffic stop. In fact, some circuits have explicitly held, post-*Whren,* that reasonable suspicion is all the Fourth Amendment requires. *See, e.g., United States v. Hill,* 195 F.3d 258, 264 (6th Cir.1999); *United States v. Navarrete–Barron,* 192 F.3d 786, 790 (8th Cir.1999); *United States v. Ozbirn,* 189 F.3d 1194, 1197 (10th Cir.1999). We join those circuits and reaf-

firm that the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops.

 Accordingly, we must determine whether Officer Hill had reasonable suspicion when he stopped Lopez–Soto. Reasonable suspicion is formed by "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Michael R.*, 90 F.3d at 346 (quoting *United States v. Garcia–Camacho*, 53 F.3d 244, 246 (9th Cir.1995)). An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also "be grounded in objective facts and be capable of rational explanation." *Id.; see also United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ("The Fourth Amendment requires some minimal level of objective justification for making the stop." (internal quotation omitted)).

Officer Hill stopped Lopez–Soto because he had been instructed that the absence of a vehicle registration sticker visible from the rear provided a reasonable basis for suspicion of a Baja California vehicle code violation. That police academy training, however, was in error. In fact, the applicable Baja California code section directs that the sticker be displayed on the windshield. According to a translation provided by the parties, the relevant section provides that "[t]he State Traffic and Transportation Department will provide together with the license plates a sticker which should be placed on the upper right hand corner of the windshield." *See* Ley de Transito y Transportes art. 44 (Baja California, Mex.). Officer Hill stopped Lopez–Soto because he held a mistaken view of the law.

This case is analogous to two recent Fifth Circuit cases in which officers similarly made traffic stops based on a mistake of law. In *United States v. Lopez–Valdez*, 178 F.3d 282 (5th Cir.1999), a Texas Department of Public Safety Trooper pulled over a car because it had a broken taillight. . The trooper believed that driving with a broken taillight violated state law, *see id.* at 285, but in fact it did not, *see id.* at 288. The court of appeals found the stop unconstitutional because, even though it may have been made in good faith, it was not objectively reasonable. *See id.* at 289 & n. 6. Similarly, in *United States v. Miller*, 146 F.3d 274 (5th Cir.1998), the court found that a traffic stop was unreasonable because the alleged infraction, having a turn signal on without turning, was not a violation of Texas law. *See id.* at 279. The Fifth Circuit explained:

> The rule articulated by the Supreme Court in *Whren* provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded.

*Id.* We agree with the Fifth Circuit's rationale.

We note that the Eighth Circuit recently upheld a traffic stop of a trailer that had two operating taillights, one of which was missing its red lens and emitting a white rather than a red light. *See Sanders*, 196 F.3d at 913. State law required all trailers built after 1973 to have two red taillights, but allowed trailers built before that date to have only one red taillight. The trailer in question had been built before 1973 and was therefore not in violation of the law. *See id.* The court nonetheless sustained the reasonableness of the stop, noting that the officer could reasonably have believed that the taillights on the trailer were in violation of the statute:

> Even if the trailer was not technically in violation of the statute, Officer Jorgenson could have reasonably believed that the trailer violated the statute because one light was missing a red lens or because he believed that the trailer was manufactured after 1973 .... In fact, given the apparent attempt to have two

functioning taillights on the trailer, Officer Jorgenson could have reasonably believed at the time that the trailer was subject to the two taillight requirement. *Id.* The officer's factual belief that the trailer was manufactured after 1973 was not unreasonable simply because it was mistaken. As the Supreme Court has explained, "what is generally demanded of the many factual determinations that must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez,* 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *see also, e.g., United States v. Garcia-Acuna,* 175 F.3d 1143, 1147 (9th Cir. 1999) (basing reasonable suspicion determination in part on factually erroneous, but reasonable, belief that license plate displayed by stopped vehicle did not belong to it); *United States v. Hatley,* 15 F.3d 856, 859 (9th Cir.1994) (upholding warrantless search of vehicle that police reasonably believed was mobile but was in fact immobile); *United States v. Shareef,* 100 F.3d 1491, 1503 (10th Cir.1996) (finding no violation of the Fourth Amendment where the police reasonably but erroneously believed that the suspect's identity matched a "hit" from the National Crime Information Center computer); *United States v. Lang,* 81 F.3d 955, 966 (10th Cir.1996) (upholding stop based on reasonable misidentification of vehicle's passenger); *United States v. Gonzalez,* 969 F.2d 999, 1006 (11th Cir.1992) (remanding probable cause determination for factual finding as to whether officer's mistaken belief that defendant's wife was conducting countersurveillance was objectively reasonable).

As in the Fifth Circuit cases of *Lopez-Valdez* and *Miller,* the traffic stop in the case before us was not objectively grounded in the governing law. What Officer Hill reasonably suspected, namely that Lopez-Soto had not affixed a registration sticker to his rear window, simply was not a violation of Baja California law. This cannot justify the stop under the Fourth Amendment. Nor is it possible to justify the stop objectively, as did the court in *Sanders,* with the facts available to Officer Hill when he made the stop: in his mistaken belief that Baja California law required the registration sticker to be visible from behind, Officer Hill did not check the windshield for the sticker. The information that he did gather—that there was no sticker on the rear or left windows—did not make it any less likely that Lopez-Soto was operating his car in conformity with the law.

■ We have no doubt that Officer Hill held his mistaken view of the law in good faith, but there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law. *See United States v. Gantt,* 194 F.3d 987, 1006 (9th Cir.1999). To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey.

We therefore hold that Officer Hill violated the Fourth Amendment when he stopped Lopez-Soto, and that the evidence gathered as a result of the unconstitutional stop must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### III

■ As an alternative basis for its denial of the motion to suppress, the district court *sua sponte* applied the inevitable discovery exception to the exclusionary rule. The district court concluded that, had Officer Hill not stopped Lopez-Soto when he did, he would inevitably have passed Lopez-Soto, checked his windshield, noted the absence of a registration sticker, and stopped Lopez-Soto after developing a proper factual basis for reasonable suspicion.

■ The inevitable discovery exception to the exclusionary rule is available when the government demonstrates, by a preponderance of the evidence, that it would inevitably have discovered the incriminating evidence through lawful means. *See*

*United States v. Mejia,* 69 F.3d 309, 319 (9th Cir.1995). The government can meet its burden by demonstrating that, "by following routine procedures, the police would inevitably have uncovered the evidence." *United States v. Ramirez-Sandoval,* 872 F.2d 1392, 1399 (9th Cir.1989). In this case, however, the government provided no evidence of what Officer Hill would have done if he had not stopped Lopez-Soto when he did, and it never argued inevitable discovery to the district court. The government conceded in its brief to this court that the evidence before the district court did not show that Officer Hill ever intended to drive to the front of Lopez-Soto's car to check the windshield, and it reiterated its concession at oral argument. We therefore find that the district court committed clear error in concluding that Officer Hill would inevitably have discovered that Lopez-Soto had not affixed a registration sticker to his windshield.

### IV

Because we hold that the evidence leading to his conviction should have been suppressed, we need not reach Lopez-Soto's claim regarding the length of his sentence.

**REVERSED.**