UNITED STATES of America,
Plaintiff,

v.

Abel DIAZ–DIAZ, Defendant.

United States of America, Plaintiff,

v.

Manuel Rosas–Gonzalez, Defendant.

United States of America, Plaintiff,

v.

Filiberto Perez–Falcon, Defendant.

Nos. CR 02–26–M–DWM, CR 02–27–M–DWM, CR 02–28–M–DWM.

United States District Court,
D. Montana.

June 21, 2002.

Kris A. McLean, Missoula, MT, for USA.

Neil Leitch, Missoula, MT, for Diaz.

David F. Ness, Federal Defenders of Montana–Great Falls Branch, Great Falls, MT, for Rosas.

Daniel R. Wilson, Attorney at Law, Kalispell, MT, for Perez.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

At about 3:15 p.m. on March 28, 2002 Missoula County Sheriff's Deputy Steve Nelson observed a blue van traveling eastbound on Interstate 90 from the Wye interchange with Highway 93 near Missoula. According to Deputy Nelson's report, the

van was traveling from 50 to 55 miles per hour. Deputy Nelson approached the van and followed it in the right hand lane of I–90 from a distance of about 90 feet. Within the first minute of his observations, he noted that the left rear tire was low and the van listed some to the left. He also noted that the van seemed to be heavily loaded, since the rear of the van was riding low. Deputy Nelson followed the van for the next eight miles to the Orange Street interchange in Missoula, where he activated his emergency lights and pulled the van over.

Deputy Nelson approached the van on the passenger side and indicated to the occupant of the front passenger seat to roll down the window. The driver of the van, Defendant Mario Rosas Gonzalez, produced a valid California driver's license and a Washington identification card. Deputy Nelson noted that there were eight other occupants of the van who appeared to be Hispanic, and asked each to produce their residency documentation. Defendant Abel Diaz–Diaz and Defendant Filiberto Perez Falcon were seated in the van. Three of the occupants of the van provided Deputy Nelson with Mexican identification cards, and another provided an expired passport. Deputy Ty Evenson responded to the scene and called Immigration and Naturalization Service Agent James Dobie.

Dobie asked to speak with each occupant of the van, beginning with Rosas, the driver. Each occupant was placed in a law enforcement vehicle individually to speak with Dobie on the telephone. Dobie did not provide any Miranda warnings prior to his questioning of any of the Defendants here. Dobie then questioned Rosas about the status of the occupants of the van. Agent Dobie reported that Rosas informed him that four of the occupants were legal and four were illegal. After speaking with each of the occupants of the van, Dobie instructed law enforcement to arrest and detain all of them.

All of the occupants were transported to the Jefferson County jail in an INS van. On March 29, 2002 INS Agents Dobie, Stavlo, and Blanca interviewed Rosas after Rosas waived his Miranda rights. On April 2, 2002 Rosas declined to provide consent to search the van before speaking to a lawyer. Law enforcement obtained a warrant and searched the van on April 3, 2002. They found a cell phone, various receipts, and miscellaneous paperwork, including a pamphlet on obtaining identification documents, false social security cards and false resident alien cards.

Defendant Rosas was subsequently charged with harboring and transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). Defendant Diaz and Defendant Perez were charged with possessing a false identification document in violation of 18 U.S.C. § 1028(a)(4). All move to suppress the evidence gathered subsequent to the stop.

## II. Analysis

■■■ Police do not have unfettered authority to stop people lawfully using public highways. The Fourth Amendment restricts government officials' discretion to perform investigatory stops of a vehicle to those occasions on which they can show "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation omitted). Reasonable suspicion "is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir.2000) (citations omitted). The requirement of particularized suspicion encompasses two elements. *See*

United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The assessment must be based upon the totality of the circumstances and the assessment must arouse a reasonable suspicion that the particular person being stopped has committed or is about to commit a crime. *Id.*

■ "[I]nnocuous conduct does not justify an investigatory stop unless there is other information or surrounding circumstances of which the police are aware, which, when considered along with the otherwise innocuous conduct, tend to indicate that criminal activity has occurred or is about to take place." *United States v. Montero–Camargo,* 208 F.3d 1122,1130 (9th Cir.2000) (*en banc*) (*citing People of the Territory of Guam v. Ichiyasu,* 838 F.2d 353, 355 (9th Cir.1988)). An officer may rely on his training and experience in drawing inferences from the facts he observes, but "those inferences must also be grounded in objective facts and be capable of rational explanation." *United States v. Rojas–Millan,* 234 F.3d 464, 468–69 (9th Cir.2000) (*citing Lopez–Soto,* 205 F.3d at 1105). Though an officer's experience may furnish the background against which the relevant facts are to be assessed as long as the inferences he draws are objectively reasonable, *Cortez,* 449 U.S. at 418, 101 S.Ct. 690, experience is not an independent factor in the reasonable suspicion analysis. *Montero–Camargo,* 208 F.3d at 1131–32. In reviewing each of the factors, a court may not engage in a "divide-and-conquer analysis." *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002). The question is whether each of the factors, when taken together, warrant further investigation. *Id.* A court must balance all relevant factors when making a "reasonableness" determination under Fourth Amendment analyses. *See*

*Whren v. United States,* 517 U.S. 806, 817, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

■ Diaz and Perez, both passengers in the van driven by Rosas, have standing to challenge the basis for the stop of the van in which they were passengers. *See United States v. Twilley,* 222 F.3d 1092, 1095 (9th Cir.2000).

■ The Ninth Circuit has held that a traffic stop based on a mistake of law violates the Fourth Amendment. *United States v. Twilley,* 222 F.3d 1092, 1096 (9th Cir.2000); *Lopez–Soto,* 205 F.3d at 1106; *United States v. King,* 244 F.3d 736, 741 (9th Cir.2001). No reasonable suspicion can be based in mistake of law, even if the officer acts in good faith. *Lopez–Soto,* 205 F.3d at 1106; *Twilley,* 222 F.3d at 1096–97. The Ninth Circuit has distinguished between a mistake of law and a mistake of fact to determine whether suspicion is reasonable for purposes of Fourth Amendment analysis. *King,* 244 F.3d at 739. "[A]n officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion." *Id.* The distinction between mistake of law and mistake of fact is "crucial" to determine whether suspicion was reasonable for a traffic stop. *Twilley,* 222 F.3d at 1096 n. 1. *See also United States v. Dorais,* 241 F.3d 1124, 1131 (9th Cir.2001) (A mistake of fact does not defeat an officer's reasonable suspicion).

■ Deputy Nelson's stated bases for the stop are that the van was traveling 50–55 miles per hour and the left rear tire was low. Deputy Nelson first claimed that the stop here was a traffic stop, but stated under questioning from the Court that he stopped the van for safety reasons, not for any suspicion of criminal activity. He stated that he would not know from what was presented in front of him that there was criminal behavior going on.

Nelson also claimed that he stopped the van to determine if the driver was suffering some impairment or if the van had some equipment or mechanical problem. He stated that he believed the speed of the van presented a safety hazard to the other drivers on the road.

The daytime speed limit on Interstate 90 between the Wye and Orange Street for a vehicle such as the van in question is 75 miles per hour at the Wye and slowing to 65 miles per hour about one mile west of the Orange Street intersection. There is no minimum speed on Interstate 90 in Montana. Pursuant to M.C.A. § 61–8–311(1), "A person may not drive a motor vehicle at a speed slow enough to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law."

Deputy Nelson drove behind the van for about 9 miles at the same speed as the van. He testified that no traffic was backed up behind them. He testified that cars were able to pass both his vehicle and the van in the left lane of the interstate. M.C.A. § 61–8–311(1) is not implicated here. Under the facts here, stopping the van for driving too slow would be a mistake of law by Deputy Nelson.

Further, Deputy Nelson's testimony undermines his contention that he stopped the van for safety concerns. Nelson testified that he noted the low left tire and slow speed and low riding rear within a minute. He then followed the van for eight more miles before stopping it near the Orange Street interchange. Since they are all Missoula urban interchanges, the interstate traffic between the Van Buren, Orange, and Reserve Street interchanges is heavier than at any other location in western Montana. Deputy Nelson testified that, after the stop, he approached the van on the passenger side because of the heavy traffic. Nelson did not look at or examine the left rear tire at any time during the stop. He never questioned Rosas about the tire, or informed him that the tire was low, or suggested that he replace the tire.

Deputy Nelson testified that he did not specifically recall if he ran a registration check while he followed the van, but remembered that he did recall that a plate check revealed that the van was not stolen or wanted. Deputy Nelson also stated he followed the van for eight miles and waited until Orange Street to stop the van so that he would have backup available for the stop.

Taken together, Nelson's testimony belies his stated purpose of safety concerns for the stop. Nelson would have no need for backup to inform the van's driver that his left tire was low, inquire about mechanical problems, or determine if the driver was impaired. Yet Nelson stated that he waited specifically to have backup available. Nelson never questioned Rosas about the tire or asked about any mechanical problems. He followed the van for eight miles through an area of relatively light traffic then stopped it in an area with high vehicular traffic. The totality of the circumstances here show that this was not a legal stop. Nelson admitted that he had no suspicion of any criminal activity afoot, and that he stopped the van for safety concerns, but his actions belie his words.

 Nelson testified that Rosas provided him with a valid drivers license and registration information. Nelson testified that none of the occupants of the van was free to go at any time after the stop. An investigative stop generally involves only a brief stop, interrogation, and a weapons check. *United States v. Robertson*, 833 F.2d 777, 780 (9th Cir.1987). Any further detention is an arrest and requires proba-

ble cause. *Id.* An arrest occurs when a reasonable person concludes he is not free to leave after brief questioning. *United States v. Del Vizo,* 918 F.2d 821, 824 (9th Cir.1990). After a traffic stop, any questioning must relate to the purpose of the stop and any detention must be temporary and unobtrusive. *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The stop and inquiry must be " 'reasonably related in scope to the justification for the initiation.' " *Brignoni Ponce,* 422 U.S. at 881, 95 S.Ct. 2574.

Agent Dobie testified that he provided no Miranda warning to any of the van's occupants before he questioned them and obtained "incriminating information" from them. Based on the information he obtained while questioning the van's occupants, Stavlo requested that Nelson and Evenson arrest and detain them.

Because there was no reasonable suspicion for the stop of the van here, all evidence obtained as a result of the stop and detention of Rosas, Perez, and Diaz, including their statements given without Miranda warnings, must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Further, all evidence in the affidavit for search warrant here is based on information obtained from Dobie's illegal post-stop questioning and must be redacted from the application for warrant. Absent this information, no probable cause for a warrant exists, and all evidence obtained from the search of the van must likewise be suppressed.

Wherefore IT IS HEREBY ORDERED that the Motions to Suppress filed by Rosas, Perez, and Diaz are GRANTED.