**UNITED STATES of America, Plaintiff,**

v.

**Garry Randolph COLE, Defendant.**

**Case No. CR13–5054 BHS.**

United States District Court, W.D. Washington, at Tacoma.

May 31, 2013.

J. Tate London, U.S. Attorney's Office, Seattle, WA, for Plaintiff.

Miriam Schwartz, Alan Zarky, Federal Public Defender's Office, Tacoma, WA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

BENJAMIN H. SETTLE, District Judge.

This matter comes before the Court on Defendant Garry Randolph Cole's ("Cole") motion to suppress (Dkt. 23). The Court has considered the pleadings filed in support of and in opposition to the motion, heard oral argument of counsel and testimony of witnesses, and reviewed the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On October 18, 2012, the Government filed a complaint against Cole alleging that Cole was a felon illegally in possession of a firearm. Dkt. 1.

On April 22, 2013, Cole filed a motion to suppress. Dkt. 23. On April 29, 2013, the Government responded. Dkt. 26. On May 2, 2013, Cole replied. Dkt. 28. On May 22, 2013, both parties supplemented their briefing. Dkts. 31–33. On May 23, 2013, Cole replied to the Government's supplement (Dkt. 34), and the Court held an evidentiary hearing (Dkt. 35). On May 28, 2013, Cole filed another reply brief (Dkt. 36), and the Court concluded the evidentiary hearing (Dkt. 39).

## II. FACTUAL BACKGROUND

### A. Traffic Stop

On August 16, 2011, at approximately 5:56 p.m., National Park Service Ranger John Feekes was traveling northbound on U.S. Highway 101, near milepost 155.5, within Olympic National Park. At that time, he observed a Chevrolet pickup truck, Washington license plate number A37246R, traveling southbound on Highway 101. Ranger Feekes testified that, after the truck passed him, he observed the truck in his rear-view mirror for approximately one quarter of a mile or ten to fifteen seconds. Ranger Feekes observed that the truck left turn indicator was on the entire time. Believing that this was a violation of Washington's traffic laws, Ranger Feekes activated his emergency lights, turned around, and proceeded to catch the truck. The truck stopped at a pull-out near milepost 154, an area lying just outside the park boundaries and within the Quinault Indian reservation. At the time of the stop, Ranger Feekes immediately noticed that the vehicle's license plates appeared to have expired in 2006. Ranger Feekes contacted dispatch and received information that the plates had in fact expired.

Ranger Feekes then approached the vehicle, identified himself, and explained why he made the stop. Cole, the driver of the vehicle, identified himself and stated that he did not have his license on him and did not have the registration or proof of insurance for the truck. Ranger Feekes returned to his vehicle and ran Cole's information through dispatch who informed him that Cole's driver's license had expired in 2008, that he had several outstanding warrants and had felony convictions, including firearms offenses. At that point, Ranger Feekes called for backup and waited in his vehicle until other officers arrived on the scene.

Approximately 30 minutes after the initial stop, at 6:22 p.m., Officers Alan Fieldson and Brian Densmore arrived at the scene. Ranger Feekes then approached Cole to notify him of the outstanding warrants and subsequently communicated with dispatch regarding whether to take Cole into custody and where to transport him.

At this same time, Officers Fieldson and Densmore approached the vehicle. Cole was asked to step outside of the truck, at which time Ranger Densmore asserts that he "saw the stock of a rifle in plain view in the back seat of Cole's truck." Dkt. 26 at 3. Cole later confirmed that there was a rifle in the truck. The officers subsequently removed the following from the truck: a loaded .22 caliber rifle, seventy (70) .22 caliber bullets, an opened bottle of wine, and a six-pack of Smirnoff alcoholic beverages located next to the driver's seat (one of the bottles had been opened and Cole acknowledged taking a few drinks from it).

Cole later submitted to a field sobriety test, which he passed. Upon consultation with the park supervisor, the decision was made not to arrest Cole for felon in possession pending further investigation and to release Cole to his family to transport him home. Ranger Feekes issued Cole citations for having an Open Container of Alcohol, Driving While License Suspended (DWLS) 1st, Improper Use of a Turn Signal, and Expired Registration.

## B. Memorandum of Understanding

The state of Washington has enforcement authority over state highways within the boundaries of the Olympic National Park. *See* RCW 37.08.210. The authority of the Park Service to enforce traffic laws on state highways that transect Olympic National Park is derivative from the state. That authority arises from a Memorandum of Understanding ("MOU") between the National Park Service Olympic National Park and Jefferson County Sheriff's Office dated May 18, 2007. The MOU provides in relevant part as follows:

The Service will:

1. When necessary, take immediate action on land inside or outside of the park, which is subject to county jurisdiction, pending the arrival of the Sherriff [sic], whenever incidents listed below occur:

\* \* \*

d. Misdemeanors committed in the presence of Park Service Law Enforcement personnel that present an immediate threat to the health and safety of the public.

\* \* \*

3. Cooperate, within the National Park Service, with the Sheriff's Office in the enforcement of laws of the State or its subdivisions, and designate NPS law enforcement personnel to assist in the enforcement of the laws of the state or its subdivisions.

Dkt. 26, Exh. A.

The MOU also provides that it will remain in effect until December 31, 2010. *See id.*, Article III, pg. 5. The parties failed to renew the MOU and it expired. Nevertheless, the Government claims that "the parties continued to act as if the MOU remained in effect, and when they learned as a consequence of this litigation that the MOU had expired, they began taking active steps to renew the MOU." Dkt. 26 at 4.

## III. DISCUSSION

Cole argues that (1) Ranger Feekes did not have reasonable suspicion that Cole had committed any offense, (2) the MOU was not in effect, and (3) Ranger Feekes was not authorized to pursue Cole onto the reservation.

### A. Reasonable Suspicion

██ It is well established that law enforcement officers may detain an individual and conduct a brief investigative detention if there is reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is sub-

stantially less than probable cause and "falls considerably short of satisfying a preponderance of the evidence standard," but does require more than a mere hunch. *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). A reasonable suspicion determination turns largely on the facts and the "totality of the circumstances" of each individual case. *See Arvizu*, 534 U.S. at 273, 122 S.Ct. 744; *United States v. Terry–Crespo*, 356 F.3d 1170, 1173 (9th Cir.2004); *United States v. Perez*, 37 F.3d 510, 514 (9th Cir. 1994)

■ In this case, the Government argues that Ranger Feekes had reasonable suspicion to stop Cole for three types of criminal activity: (1) misuse of the turn indicator was a traffic infraction (Dkt. 33 at 3–4), (2) Cole was driving under the influence (Dkt. 26 at 8), and (3) Cole's use of his turn signal was a violation of Washington's negligent driving statute (Dkt. 33 at 4–6). First, the Government fails to provide a Washington statute that driving with one's turn indicator on is a traffic infraction. Thus, on this issue, there was no basis for criminal activity and no basis for reasonable suspicion of criminal activity.

■ The Government, however, argues that the Court should conclude that the stop was lawful because Ranger Feekes had a good faith, yet mistaken, belief that it was a traffic infraction to drive with one's turn indicator on. Dkt. 26 at 8. This argument is without merit because officers are presumed to know the law and "when a traffic stop is not 'objectively grounded in the governing law,' a mistake of law 'cannot justify the stop under the Fourth Amendment.'" *United States v. Mc-Donald*, 453 F.3d 958, 961 (7th Cir.2006) (quoting *United States v. Lopez–Soto*, 205 F.3d 1101, 1106 (9th Cir.2000)). For ex-

ample, in *Lopez–Soto*, the Ninth Circuit held that the officer's actions were not "objectively grounded in the governing law" when the action in question "simply was not a violation of Baja California law." *Id.* at 1106.

In reaching this conclusion, the court distinguished two Fifth Circuit cases from an Eighth Circuit case. *Id.* at 1105. In one of the Fifth Circuit cases, "the court found that a traffic stop was unreasonable because the alleged infraction, having a turn signal on without turning, was not a violation of Texas law." *Id.* (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir.1998)). On the other hand, in the Eighth Circuit case, "State law required all trailers built after 1973 to have two red taillights...." *Id.* (citing *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir.1999)). The court upheld the stop because, even though the trailer in question was built before 1973, the officer could have reasonably believed that it had been built after 1973. *Sanders*, 196 F.3d at 913. Therefore, it is clear that Ranger Feekes' stop was unreasonable because the alleged infraction, having a turn signal on without turning, was simply not a violation of Washington law.

■ Second, whether there was reasonable suspicion that Cole was driving under the influence requires a totality of the circumstances analysis. The facts are fairly simple: Cole was driving with his left turn indicator on for a modest distance and there was limited opportunity for Cole to have executed a left turn. While the Court may consider both allegations as well as an officer's representations regarding his training, the evidence must be more than a "sum of zeros." *United States v. Fernandez–Castillo*, 324 F.3d 1114, 1123 (9th Cir.2003). Frankly, the Court agrees with Cole that failure to turn off a turn indicator light "describe[s] too

many individuals to create a reasonable suspicion that this particular defendant was engaged in criminal activity." Dkt. 28 at 6 (citing *United States v. Rodriguez*, 976 F.2d 592, 596 (9th Cir.1992), *amended* 997 F.2d 1306 (9th Cir.1993)). The Court also accepts Cole's expert's testimony that continued use of a turn indicator, without more, is not a cue to suspect someone of driving under the influence. Moreover, although an "officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, ... those inferences must also 'be grounded in objective facts and be capable of rational explanation.'" *Lopez–Soto*, 205 F.3d at 1105 (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir.1996)). The Court finds that the act of failing to turn off a turn indicator, without more, is not a rational explanation for suspecting someone is driving under the influence. This is particularly true where in this case the activated turn indicator was observed for a very short distance and where there were possible exits off the highway on the left.

■ Third, the facts do not support a finding of reasonable suspicion that Cole was violating Washington's negligent driving law. The specific statute requires that the driving actually endanger or be "likely" to endanger persons or property. RCW 46.61.525. Although Ranger Feekes testified that there may have been other cars on the road when Cole was still driving, there is no evidence that Cole actually endangered or was likely to endangered another person or property. This is especially true in the ten to fifteen seconds in which Ranger Feekes observed Cole and concluded that Cole was violating the law. Therefore, the Court concludes Ranger Feekes's suspicion of any criminal activity was unreasonable.

■ Finally, during the Government's closing argument, the prosecutor cited *United States v. Millan*, 36 F.3d 886 (9th Cir.1994), for the proposition that officers may make stops if they "observe a safety hazard." *Id.* at 889 n. 3 (citing *Delaware v. Prouse*, 440 U.S. 648, 660, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). While this language is certainly helpful to the Government's case, it must be placed in proper context. In *Millan*, the officers stopped the defendant because they observed that his vehicle had a cracked windshield. *Millan*, 36 F.3d at 887. The Court held that driving with a cracked windshield was not illegal, the Government had failed to submit any evidence that the cracked windshield was a safety hazard, and the stop was pretextual. *Id.* at 889–890. Applying that logic to this case, the Court finds that the Government has failed to show that driving with a turn indicator activated correlates to any safety aspect of Cole's vehicle, especially where in this case it was observed for such a short duration and where left turns off the highway were possible. Therefore, the Court grants Cole's motion because the Government has failed to show a legal or legitimate reason to stop Cole.

## B. Dissipating the Taint

■ The Government argues that (1) Ranger Feekes had subsequent justification to continue the detention of Cole and (2) it "is well established that subsequent or intervening acts may dissipate the taint of an unlawful stop or search." Dkt. 26 at 9–10. With regard to the former, justification for "continued" detention is irrelevant unless there is justification for the initial detention. Therefore, the Court declines to accept the Government's argument on this issue.

With regard to the latter argument, the Government cites a case for the proposition of intervening acts and a case for the proposition of subsequent justification to overcome the unreasonable stop. In *Unit-*

ed States v. Garcia, 516 F.2d 318 (9th Cir.1975), the defendant was ordered to stop in a secondary holding area at a fixed checkpoint operated by the United States Border Patrol. *Id.* at 319. The defendant "drove to the secondary area, parked momentarily and then sped off." *Id.* The officers gave chase, stopped the defendant, and found controlled substances in his vehicle. *Id.* The Court held that, although the initial order to stop was not supported by reasonable suspicion, "the flight and high-speed chase clearly supplied probable cause to arrest [the driver] and then to search his car." *Id.* at 320. This holding was based on the principle that "where the illegal conduct of the police is only a necessary condition leading up to the suspect's act, no taint attaches to [the police officer's] conduct...." *Id.* at 319. The court noted that the "flight was the voluntary conduct of [the defendant]." *Id.*

While *Garcia* provides interesting facts and a unique principle of Fourth Amendment law, it is easily distinguishable from the case at hand. In this case, there was not a subsequent, voluntary act by Cole such as fleeing the stop, as in *Garcia,* or a confession, as in *Allen v. Cupp,* 426 F.2d 756, 759 (9th Cir.1970). Cole remained in his vehicle until he was ordered to exit, and, when Cole exited, the officer saw the firearm. If Cole had voluntarily offered that he was carrying a firearm, then the analysis may be different. However, this is a simple case of the officers gathering additional evidence subsequent to an illegal stop. Therefore, the Court declines to adopt the Government's argument that an intervening act removes the taint of the illegal stop.

With regard to the other case the Government cites, *United States v. Kreisel,* 210 F.3d 868, 869 (8th Cir.2000), the court's reasoning is similar if not identical to that in *Garcia.* In *Kreisel,* the defendant consented to the search of the truck.

*Id.* at 869. The court concluded that "the search was good because [the defendant's] consent provided a basis for [the search] that was independent of whether the officers' stop of the truck comported with the fourth amendment." *Id. Kreisel* is easily distinguishable because Cole did not give consent to search his truck. Therefore, the Court finds that there is no reason to conclude that any act by Cole or Ranger Feekes removes the taint of the illegal stop.

### C. Other Arguments

Cole's remaining arguments are that there was no valid MOU and that Ranger Feekes was not authorized to pursue Cole onto the reservation. With regard to the former, it appears to be a question of first impression in Washington. The Court declines to comment on the question because Cole's other arguments are sufficient to grant his requested relief in its entirety. With regard to the latter, based on *United States v. Patch,* 114 F.3d 131, 134 (9th Cir.1997), it appears that Ranger Feekes could lawfully pursue Cole onto the reservation. Therefore, the Court will not address this issue either because, if the Court decided this issue, it would most likely not rule in Cole's favor.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Cole's motion to suppress (Dkt. 23) is **GRANTED** for the reasons set forth herein.