Filed 4/14/23  P. v. Perkins CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095832 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE011911) |
| v. | |
| KOLIJAH DESHAUN PERKINS, | |
| Defendant and Appellant. | |

After the trial court denied his motion to suppress evidence (Pen. Code, § 1538.5),[1] defendant Kolijah Deshaun Perkins pleaded no contest to carrying a concealed firearm (§ 25400, subd. (a)(1)).  Pursuant to the terms of his plea agreement, the trial court placed defendant on probation for two years.  He now appeals, contending the trial court erred in denying his suppression motion.  Finding no error, we affirm the judgment of the trial court.

---

[1] Undesignated statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Facts*

On July 14, 2021, during the late afternoon, Sacramento Police Officer Mark Thrall and three other officers were patrolling a known high-crime area of Sacramento in an unmarked vehicle. Officer Thrall saw a dark green BMW without a front license plate driving on the road. Officer Thrall followed the BMW and conducted a "records check of the license plate"; defendant was the registered owner, but the car's registration was expired.

Eventually, the BMW stopped in a store parking lot; defendant got out of the car and went inside the store. While defendant was inside the store, the officers conducted another "records check," this time on defendant, and learned defendant recently drove a friend to the hospital after that friend was shot during a robbery.

Approximately 10 minutes after going into the store, defendant came out. He got into the BMW, pulled out of the parking stall, and backed into another parking stall. The officers approached defendant to discuss the missing license plate and expired registration. Defendant started to get out of the car; he was holding a black "satchel." Officer Thrall stopped defendant and asked to search the satchel; defendant agreed and gave the satchel to Officer Thrall. The satchel "did not feel as if there was something as heavy as a firearm" in it, so Officer Thrall handed it to Officer Conner Mills. Officer Mills looked inside the satchel and did not find a firearm or anything illegal.

Officer Thrall asked defendant for his driver's license, but defendant did not have it with him. Defendant was visibly shaking; he appeared nervous to Officer Thrall. Officer Thrall asked defendant why he was shaking, and defendant said the officers were making him nervous. While talking to defendant at the driver's side door, Officer Thrall saw a beanie shoved into the small space between the driver's seat and the center console. It appeared to Officer Thrall "that the beanie was placed there purposefully." Officer

2

Thrall also smelled "a large quantity of unburnt marijuana" coming from inside the car and saw a small amount of "loose-leaf marijuana" on the floorboard.

Defendant remained seated in the driver's seat, with his hands visible. Officer Thrall asked defendant to step out of the car because he was concerned for the officers' safety and intended to issue a citation for the Vehicle Code violations. As defendant was getting out of the car, Officer Thrall patted him down to ensure defendant did not have any weapons on him. There were none. Officer Thrall asked defendant whether there was any marijuana in the car; defendant said there was a "doobie."[2] However, when Officer Mills asked defendant where the doobie was, defendant said there was no doobie in the car.

Officer Thrall saw a backpack in the car and asked defendant what was inside. Defendant said it might contain clothes that belonged to "his girl." The officers asked defendant for permission to search the backpack and the car; defendant refused. Defendant did ask Officer Thrall to get his water but directed Officer Thrall to get it "only from the passenger side." Officer Thrall suspected defendant did not want him to see what was under the beanie. Officer Thrall searched the car.

During the search of defendant's car, Officer Thrall looked under the beanie and found a loaded firearm. The firearm did not have a serial number and was not registered. Officer Thrall also looked inside the backpack and found approximately 171 grams of "processed marijuana." The officers arrested defendant. The entire encounter, from contact with defendant to his arrest, lasted 10 minutes.

*Procedural Background*

The People charged defendant with carrying a concealed firearm (§ 25400, subd. (a)(1)); they alleged that firearm was loaded (§ 25400, subd. (c)(6)). The People also

---

[2] A doobie is a rolled-up cigarette paper filled with marijuana (i.e., a marijuana cigarette).

charged defendant with carrying a loaded firearm in public. (§ 25850, subd. (a).) The People further alleged defendant was not the registered owner of the firearm (§ 11106, subd. (c)(1)) and he committed the offenses while he was released from custody on a primary offense prior to judgment on the primary offense becoming final (§ 12022.1). Defendant initially pleaded not guilty to the charges and denied the allegations.

On October 14, 2021, defendant filed a motion to suppress the evidence obtained as a result of the traffic stop. The People opposed the motion. In his motion, defendant argued the warrantless searches of his backpack and car were not supported by probable cause in violation of his Fourth Amendment rights. He also argued the traffic stop became a "prolonged unlawful detention after officers abandoned their interest in expired registration and it became a fishing expedition." Finally, he argued the doctrine of inevitable discovery did not apply.

At the hearing on the motion to suppress, Officer Thrall testified that based on his experience and training, he can detect the smell of marijuana and is able to recognize the distinct smells of burnt and unburnt marijuana. He also knows it is difficult to smell small amounts of marijuana, but easy to smell large amounts. Moreover, in his experience, people who are nervous interacting with him are usually hiding something.

Officer Thrall also testified that, based on his experience and training, people who have been shot or shot at, or are associated with others who have been shot or shot at, will arm themselves either for retaliation or protection. He also knows that people who carry guns often conceal them in satchels or in the space between the driver's seat and the center console where the gun can be hidden but is easily accessible. Days before this traffic stop, Officer Thrall found a firearm in that space between the driver's seat and the center console during the search of a different vehicle.

Following supplemental briefs on the recent changes in state law relative to regulating marijuana, the magistrate denied defendant's motion. The magistrate found the detention was not unduly prolonged because only six minutes passed from the

4

moment the officers stopped defendant until they found the firearm. Moreover, the magistrate found, "the progression of inquiry and conduct was reasonable and lawful." The officers' "observations led to a progression of concerns, in addition to the reasons that underlie the initial traffic stop. Specifically, their observations gave rise to specific, articulable reasons to be concerned about both the possible presence of marijuana in the car, in an illegal amount, and the possible presence of a firearm in the car."

The magistrate also found the officers had probable cause to search defendant's car based on the combination of circumstances, as presented by the evidence, and the officers' experience with marijuana and firearms.

Defendant later moved the trial court to dismiss the charges and renewed his motion to suppress the evidence. The court denied both motions, and shortly thereafter defendant pleaded no contest to possessing a concealed firearm. In exchange for his plea, the remaining charge and allegations were dismissed. Pursuant to the terms of his plea agreement, the trial court "ordered that imposition of judgment and sentence be suspended" and placed defendant on formal probation for two years with a 90-day sentence "out of custody."

Defendant appeals without a certificate of probable cause.

## DISCUSSION

Defendant raises three arguments on appeal: (1) his detention was unduly prolonged, (2) the officers had no legal authority to pat him down for weapons, and (3) the smell of unburnt marijuana did not provide probable cause for the warrantless search of his car.[3] We affirm the judgment.

---

[3] Defendant also argues the rule of inevitable discovery does not apply. Because we conclude there was probable cause to search the car, we do not address this alternative argument.

5

# I

## *Standard of Review*

"In reviewing a trial court's decision to grant a motion to suppress evidence, we rely on the trial court's express and implied factual findings, provided they are supported by substantial evidence, to independently determine whether the search was constitutional.  [Citation.]  'Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court.'  [Citation.]  It is the trial court's role to evaluate witness credibility, resolve conflicts in the testimony, weigh the evidence, and draw factual inferences.  [Citation.]  We review those factual findings under the deferential substantial evidence standard, considering the evidence in the light most favorable to the trial court's order."  (*People v. Moore* (2021) 64 Cal.App.5th 291, 296-297 (*Moore*).)

# II

## *Analysis*

### A.     *The Stop*

Defendant does not contend the officers' initial stop was unlawful.  Rather, he contends the stop *became* unlawful when it was unduly prolonged after the officers "abandoned the traffic infractions to begin a fishing expedition."  We disagree.

"An investigatory stop exceeds constitutional bounds when extended beyond what is reasonably necessary under the circumstances that made its initiation permissible.  [Citation.]  Circumstances which develop during a detention may provide reasonable suspicion to prolong the detention.  [Citation.]  There is no set time limit for a permissible investigative stop; the question is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly."  (*People v. Russell* (2000) 81 Cal.App.4th 96, 101-102.)

6

Here, the detention took approximately 10 minutes, an objectively short amount of time.  More importantly, in that time, circumstances developed that gave the officers "reasonable suspicion to prolong the detention."  (*People v. Russell, supra*, 81 Cal.App.4th at p. 102.)  Based on his experience and what he knew about defendant, Officer Thrall knew when he approached defendant that it was reasonably likely defendant was armed.  The officers thus searched the satchel defendant was carrying but found no firearm.

Officer Thrall then saw a beanie stuffed between the driver's seat and the center console.  He knew this was a common method for concealing a firearm within arm's reach.  He also smelled a potentially illegal amount of unburnt marijuana and saw loose-leaf marijuana on the floorboards.  Officer Thrall asked defendant if he had marijuana in the car.  Defendant made inconsistent statements about whether he did or did not.

Officer Thrall then asked defendant if he could search the car, and the backpack he saw inside the car; defendant refused.  He asked defendant to step out of the car.  As defendant was getting out of the car, Officer Thrall conducted a patdown search of defendant's person and confirmed defendant was not concealing a weapon on his body.  At that point, Officer Thrall searched the car; he found a firearm under the beanie and marijuana in the backpack.  The officers arrested defendant.

In sum, as quickly as these circumstances presented themselves, the officers worked to confirm or dispel their suspicion of illegal activity.  They searched the satchel, they asked defendant to step out of the car, and they searched his person.  Then, they searched the car.  The entire encounter, including the arrest, lasted 10 minutes.  We thus conclude sufficient evidence supports the trial court's ruling the detention was not unduly prolonged.

## B. *The Patdown Search*

Defendant also contends the officers had no legal authority to perform a "*Terry* frisk because they had no reason to believe he was armed and dangerous."  Defendant did

not make this claim in the trial court. Even assuming he preserved this issue, however, his contention fails because the patdown search did not lead to the discovery of any incriminating evidence. As a result, there is no remedy available to defendant. (See *People v. Downey* (2011) 198 Cal.App.4th 652, 657.) The contention would fail in any event.

"In *Terry v. Ohio* (1968) 392 U.S. 1, 27, the United States Supreme Court held that a police officer who lacks probable cause to arrest could undertake a patdown search only '. . . where he has reason to believe that he is dealing with an armed and dangerous individual . . . .' 'The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' [Citation.] The officer must be able to point to specific and articulable facts together with rational inferences therefrom which reasonably support a suspicion that the suspect is armed and dangerous." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 955-956.)

Officer Thrall conducted the patdown search of defendant as defendant was getting out of his car. At that point, Officer Thrall knew they were in a high-crime area. (See *Moore, supra*, 64 Cal.App.5th at pp. 301-302 [reputation of an area for criminal activity is an articulable fact upon which an officer can rely].) He also knew defendant might be armed for either protection or retaliation as a result of his friend recently being shot. Officer Thrall knew defendant was carrying a type of bag frequently used to conceal guns, but that bag was already found to be empty. Officer Thrall suspected the car contained an illegal amount of marijuana, and defendant was notably nervous. (*Ibid.* [nervous behavior may be considered in determining whether probable cause exists].) Based on these specific and articulable facts, it was rational for Officer Thrall to suspect defendant may have a firearm on his person and was therefore armed and dangerous.

In short, were this claim preserved and viable, it would fail.[4]

### C.    Search of the Vehicle

Defendant contends "the odor of unburned marijuana did not provide probable cause to search the vehicle, nor did Thrall's subjective belief a firearm might be present." We disagree.

### 1.    Legal Principles

"The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures.  (U.S. Const., 4th Amend.)  Warrantless searches are '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'  [Citations.]  One such exception to the warrant requirement is the automobile exception, which allows for warrantless searches of automobiles where an officer has probable cause to believe the vehicle contains contraband or evidence of a crime.  [Citations.]  Probable cause to search exists 'where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found.'  [Citation.]  An officer who has probable cause to search pursuant to the automobile exception may then conduct a probing search of all 'compartments and containers within the vehicle whose contents are not in plain view.'  [Citation.]

"A warrantless automobile search 'is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.'  [Citation.]  Thus, 'if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.'  [Citation.]

---

[4]  To the extent defendant raises the patdown search as another basis for unduly prolonging the detention, that issue is resolved above.

"As the United States Supreme Court has noted, 'probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' [Citation.] Further, '[a]n officer is entitled to rely on his [or her] training and experience in drawing inferences from the facts he [or she] observes, but those inferences must also "be grounded in objective facts and be capable of rational explanation." ' [Citation.] When considering the validity of the evidence, it is to be analyzed ' "as understood by those versed in the field of law enforcement." ' [Citation.] 'The principal components of a determination of . . . probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount . . . to probable cause.' [Citation.] As such, we consider the totality of the circumstances, and analyze these facts as would a reasonable police officer, in assessing the officer's probable cause, rather than looking to singular facts in a vacuum." (*Moore, supra*, 64 Cal.App.5th at pp. 297-298.)

  *2. Analysis*

  First, defendant contends the smell of marijuana does not support a finding of probable cause. Defendant is correct in so far as the smell alone may not support a finding of probable cause. The smell of fresh marijuana, combined with other circumstances, however, is sufficient to find probable cause. (*Moore, supra*, 64 Cal.App.5th at p. 300.) Like in *Moore*, a case decided by this court last year, it was not just the smell of marijuana that caused Officer Thrall to search defendant's car. On the contrary, defendant was stopped in a known high-crime area. (*Id*. at p. 301.) Defendant was nervous. (*Id.* at p. 302.) And he changed his story about the presence of marijuana in his car while stopped, presumably to avoid a search.

  In addition, while it is accurate to say that Officer Thrall only saw a small amount of loose-leaf marijuana on the car's floorboards, he knew based on his experience that if he could smell the unburnt marijuana, it was likely to be a large, and therefore illegal,

10

amount.  He was entitled to rely on his experience to make that inference.  (*U.S. v. Lopez-Soto* (9th Cir. 2000) 205 F.3d 1101, 1105.)

Defendant also contends Officer Thrall could not establish probable cause to search the car based on Thrall's "assumption" that defendant "was hiding a gun in his car."  Defendant's contention overlooks Officer Thrall's experience, which renders Officer Thrall's inference that defendant was hiding a firearm in the car more than just a bare "assumption."  As noted above, police officers are allowed to rely on their "training and experience in drawing inferences from the facts he [or she] observes."  (*U.S. v. Lopez-Soto, supra*, 205 F.3d at p. 1105.)

Here, based on his training and experience, Officer Thrall knew defendant may be armed with a firearm, but he quickly learned that firearm was not concealed in defendant's satchel.  Officer Thrall then saw the beanie stuffed between the driver's seat and center console, which based on his experience, was another likely place for defendant to conceal a firearm.  Defendant's efforts to keep Officer Thrall away from the beanie only served to reinforce the inference that he was hiding a firearm.

In short, based on the totality of circumstances, including the neighborhood, the smell of unburnt marijuana, the likelihood defendant was armed, and defendant's own behavior, we conclude there was sufficient evidence to support the trial court's order finding probable cause to search defendant's car and denying defendant's motion to suppress.

11

## DISPOSITION

The judgment is affirmed.

                                              /s/
                                          EARL, J.

We concur:

    /s/
RENNER, Acting P. J.

    /s/
BOULWARE EURIE, J.